## John Beckley v. Ella S. Beckley.

1. MARRIAGE—*what not sufficient to annul.* Held, in this case, that there was not such deception upon the part of the defendant nor such conduct upon her part as would justify a court of equity in annulling the marriage contract.

Bill to annul marriage. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

TIPTON & TIPTON, for appellant.

No appearance for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

Appellant filed his bill in the McLean Circuit Court averring his marriage with appellee at Heyworth in said county on May 20, 1903; that he lived with her three or four days, when she left and went to Fostoria, Ohio; that after about four weeks she returned and they resided together at Heyworth for about three weeks when she determined to go,

and did go, back to Fostoria, and he went with her but did not live with her at Fostoria, and that she now is there; that he was not acquainted with her at the time of their marriage and had met her but twice before; that she represented to him that she was a great church worker and sabbath-school worker, and that she was a good, religious woman; that he requested her to furnish him a certificate from her minister of her church standing and that she thereupon furnished a certificate, but that the truth is she wrote it herself and it is false and fraudulent; that she was not a member of the M. E. Church or any other church, and that she was a woman of bad repute and a prostitute; that she came from Fostoria to Bloomington on May 19, 1903, and on the next day they were married; that he was deceived and defrauded as to her chastity and virtue, and that by fraudulent representations she induced him to sell his home in Heyworth for the purpose of purchasing property in Fostoria; that she represented that she had sold property in Ohio and if he and she would put their money together they could buy a place in Fostoria and would take the deed in the names of both; that in pursuance of that arrangement, acting in good faith, and not knowing her general character, he sold his place in Heyworth, gave her a draft for $235 and they went to Fostoria; that when they reached Fostoria she told him that she would stop with some friends; that he could go to the hotel and she would meet him next morning at a certain street corner; that he went to the corner next morning, but she did not appear; that he ascertained where she was, went there and saw her, and she told him he could go his way and she would go her way, and she was not going to live with him any longer; that he went again to see her and she told him to get a move on himself or she would blow him into eternity, and thereupon he left the premises; that he married defendant believing she was a virtuous woman, a Sunday-school worker and a church member, and that she desired to marry him in good faith, but that the truth is she was a member of no church, is a woman of bad repute

and a prostitute, and did not marry him in good faith and did not intend to live with him; that on the next day after their arrival at Fostoria she purchased a lot in Fostoria for $650 cash, using the said $235 of his money, and took the deed in the name of Ella Slick Helmer, and not in name of Ella Slick Helmer Beckley, with the intention of converting his money to her own use; that the defendant, when she married him, had no intention of living with him but intended to get as much money and property from him as she could and then leave him; and that she was guilty of fraud in representing herself as a virtuous, Christian woman and in marrying him with the intentions aforesaid; that he knew nothing about the character of the defendant but relied upon her statements aforesaid. The foregoing is, in substance, a copy of the stating part of the bill. The prayer of the bill is that the marriage be declared null and void and for general relief. Defendant was duly served with copy of bill and defaulted. The cause was heard by the court and thereupon was dismissed for want of equity.

Upon the hearing the complainant testified that he got defendant's name through a matrimonial agency in Ohio; got fifty names; wrote to seven and received answers from six; that defendant, after they were married, destroyed the letters; that she represented in the letters that she was of good character, a lady, belonged to the Methodist church and was a teacher and worker in the Sunday school; that afterwards he made inquiry in Fostoria as to her character and was told that she was a disagreeable, quarrelsome person. One young man said he had seen men come away from her home in the early morning; people did not say her virtue was bad, only what this young man said; others told him she was disagreeable and quarrelsome and told him that he could not live with her. They were married on Wednesday, May 20; the next Monday she went back to Fostoria and stayed there nearly four weeks, came back to him and stayed about three weeks, when he sold his property, at her request, and they then went to Fostoria. She joined in the deed, and he gave her a draft in her own

name for $235; that she went to a friend's home and he
to a hotel. He went next morning to meet her at a street
corner; she did not appear. Afterwards he found her at a
house. She told him she was not going to live with him
any longer, and said : " Get a move on you and move quick
or I'll blow you into eternity ; " and he went away. That
she got $50 from him and the $235, and he sent her at two
different times $15 at each time, and at another time gave
her $18.50; that he had not been married before.

A witness, G. L. Wright, testified that she recommended
herself to be a Sunday-school teacher and a member of the
Methodist church in good standing and sent a letter sup-
posed to be from the pastor, but which he thought was in
her handwriting. This was all the evidence.

We do not deem it necessary to write at any length nor
quote authority in expressing our views upon this case.
The bill is demurrable; it states no case; it shows affirma-
tively that he has no case and the proof utterly fails to
establish what might be called the most important aver-
ment of the bill—that she was a prostitute. The com-
plainant was evidently very desirous to get married.
Living in Illinois he wrote to a broker in the matrimonial
market in Ohio and got a list of fifty articles in that mar-
ket that were for sale. He commenced negotiations with
seven and finally struck a bargain with Ella Slick of Fos-
toria, Ohio. She came on to Bloomington, arriving on the
19th of May and on the 20th, next day, they were married;
lived together three days, when she went back and stayed a
month at Fostoria; then came back and they lived together
for three weeks. Then they sold his real estate in Hey-
worth and he gave her $235 of the proceeds and they both
went to Fostoria where she told him to "get a move on
and move quick" and he obeyed the order. There was
neither fraud, error or duress as known to the law. He
got possession of the same flesh and bones he bargained
for; there was no error or fraud in that respect; the mar-
riage ceremony was performed; the marriage was con-
summated; they lived together as husband and wife; they

are husband and wife. It is argued by counsel that the default confessed the averments of the bill and that no further proof was required. We question that proposition; a bill of this character is vastly different from bills to set aside deeds or contracts made between individuals in the course of trade or business. The marriage contract stands on a different basis from that of such contracts; but even if the argument be correct it avails nothing because the averments of the bill were wholly insufficient upon which to base a decree. We forbear the discussion of them.

Chancellor Kent said: "It is well understood that error and even disingenuous representations, in respect to the qualities of one of the contracting parties, as his condition, rank, fortune, manners, and character, would be insufficient. The law makes no provision for the relief of a blind credulity, however it may have been produced." Kent Com., vol. 2, p. 78. That quotation covers all of this case.

*Affirmed.*