## James A. Lyon v. Susanne Barney, otherwise known as Susanne Lyon.

### Gen. No. 13,155.

1. MARRIAGE—*what fraud not sufficient to annul.* Fraudulent representations of the fact that one of the parties to the marriage had been cured of epileptic attacks, to which she had to the knowledge of the other party been previously subject, is not ground for annulment.

2. MARRIAGE—*when not induced by false representations.* Held, from the evidence, that the marriage in question was not induced by false representations and that even if it had been the marriage contract was ratified.

Bill for annulment of marriage. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 18, 1907.

CLARK & CLARK, for appellant.

JAMES P. HARROLD, for appellee; THEODORE R. TUT-
HILL, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the
court.

Appellant filed his bill of complaint in the Superior
Court for the annulment of his contract of marriage
with appellee. A general demurrer was interposed by
appellee to the bill, which the chancellor sustained and
dismissed the bill for want of equity. Appellant brings
the record to this court for review, and assigns as error
the action of the chancellor in sustaining the demurrer
and in dismissing the bill for want of equity.

The parties were married at the home of appellee
in Richford, Tioga county, New York, June 15, 1904,
and immediately thereafter proceeded to Chicago, the
home of appellant where they resided in the conjugal
relation until April 9, 1905, when appellant returned
with appellee to Richford and delivered her to and
left her with her parents at their home in Richford, on
the ground and claim that he was induced to enter into
the marriage contract by the fraudulent representa-
tions of appellee as to the condition of her health.

We gather from the averments of the bill that the
parties had been acquaintances for sixteen years prior
to the marriage ceremony, and that for fifteen years
of that time appellant knew that appellee had suffered
from the distressing affliction of epilepsy, for which, as
appellant knew, she had received considerable medical
treatment in an effort to be cured. That on Septem-
ber 18, 1903, the parties agreed to be married to each
other on June 15th following. That on the day of the
wedding, June 15, 1904, and before the marriage con-
tract was consummated at Richford, appellee, as an
inducement to appellant to enter into the contract, as
appellant charges, fraudulently and falsely repre-
sented to him that she had been entirely cured of epi-
lepsy, and had not had an epileptic fit for eight years
prior thereto. That appellant in consenting to said

marriage relied implicitly upon the truthfulness of such representations. 'That thereafter they lived and cohabited together as husband and wife until March 28, 1905, and that, on April 7, 1905, appellant learned for the first time of the falsity of said representations—although he knew that she had been an epileptic and subject to epileptic fits at irregular though frequent intervals for ten years prior to said marriage—and that since the date of such knowledge he ceased to live and cohabit with her as her husband, and on April 9, 1905, returned her to her parents at Richford. That about six weeks after their arrival in Chicago appellee had suffered an attack of epilepsy, and since that time had several other such attacks. That, still believing in the truth of her representations, he furnished her with medical treatment in the expectation of effecting a cure, but that, on March 30, 1905, she had three epileptic fits, and is now hopelessly incurable. That when appellee has an epileptic fit she becomes unconscious, has convulsive motions of the muscles of her body, requiring great force to control her, which frightens appellant and fills him with grief and compassion for her in her affliction; that the paroxysms occur without warning, and are preceded by "a shrill, blood-curdling scream," and leave appellee in a condition of physical prostration requiring two or three days of rest to restore her to her normal condition. That had appellant known of the facts as to appellee's true plight, he never would have entered into the marriage contract. Appellant then avers (R., p. 5): "That the statutes of the State of New York in force on the date of the said contract, and at the time of said pretended marriage, and at the present time, provide that, in case the consent of one of the parties to a marriage was obtained by fraud, such marriage may be annulled, and an action for that purpose may be maintained at any time by the party whose consent was so obtained, unless the parties to said marriage have cohabited with full knowledge of such fraud upon the part of the

innocent party to the contract. And complainant expressly charges that his consent to said marriage was obtained by the fraud of said Susanne in making the representations aforesaid, and in concealing from him the knowledge of her epileptic condition as hereinbefore alleged; and that, by reason thereof, said marriage is voidable.''

Appellant urges that the interpretation to be placed upon his marriage contract depends upon the *lex loci contractus* and not the *lex forum,* and directs our attention to section 1743 of the Civil Code of Procedure of the State of New York, which provides *inter alia* that ''such marriage may be annulled and an action for that purpose maintained at any time by the party whose consent was obtained by fraud, unless the parties to said marriage have cohabited with full knowledge of such fraud upon the part of the innocent party to the contract.''

Under the averments of this bill it is immaterial, as affecting the ultimate judgment to be rendered in this case, whether the Civil Code of Procedure is the standard by which the binding force or not of this marriage contract must be determined, or whether the New York code is confined in its operation solely to the remedy obtainable thereunder in the courts of that State. By whichever standard the rights of appellant may be measured, the result must be the same.

The single ground upon which, by the New York code, a right to a severance of the marriage tie may be obtained, with its accompanying disability of remarriage in the erring party, may have led the New York courts into a rather free interpretation of the character of the fraud contemplated by the code to enable mismated couples to annul the bonds, when their binding force becomes a galling yoke. However, no well-considered case in a court of review in that State has gone to the length of holding that the bonds of matrimony can be annulled for the causes alleged to constitute the fraud in appellant's bill.

All of the cases to which we have been cited by appellant place the annulment of the marriage contract for the fraud of the party who has lured to the marriage bed his or her conjugal mate when suffering from so loathsome and infectious a disease as, or akin to, syphilis—a situation repugnant to the finer sensibilities of the innocent victim, rendering the sustaining and continuance of the marriage relation impossible, and, if continued, a menace to health. Ryder v. Ryder, 66 Vt. 158; Myer v. Myer, 49 Howard Pr. 311; 19 Am. & Eng. Ency. of Law (2nd ed.), 1186. Or such fraud as in DiLorenzo v. DiLorenzo, 174 N. Y. 467, where the woman procured the man's consent to the marriage upon the representation that she had been pregnant by him and had been delivered of a child during his absence, which she exhibited to him. This statement was wholly false, and made for the purpose of inducing him to marry her on the pretense of thereby legitimizing the child. It was a scheme and strategy concocted for the purpose of inducing marriage. It was a glaring fraud, affecting the essence of the contract, and but for which DiLorenzo would not have consented to a marriage.

The fraudulent representation here relied upon, that appellee had been cured of her epilepsy, was no more than the expression of an opinion. The parties had known each other for sixteen years, and appellant had known of the epileptic affliction from which appellee suffered for fifteen years before the marriage. There is no claim that appellee did anything to prevent appellant from fully informing himself as to her real physical condition. The doctor in attendance upon her, it may be assumed, was accessible; the village neighbors had not lost either their powers or disposition to be communicative, upon reasonable provocation. The parents might have been appealed to for information, and their opinion upon the subject obtained, but as to any such inquiries the bill is silent. The contract of

marriage was made nine months prior to the date fixed
for its celebration, and it was celebrated on the date
then settled upon. No averment that any representa-
tion was made by appellee as to her being cured of her
epilepsy as an inducement for making the promise of
marriage appears in the bill, such being reserved, ac-
cording to the bill, to the day fixed for the consumma-
tion of the promise. The promise was without condi-
tion to marry at a fixed date; it rested in parol, it was
to be performed within one year; it was an enforce-
able, binding promise, which appellant was bound to
perform without further action on the part of appellee,
except to be ready, willing and able to perform her
part of the contract, which assumedly she was, the bill
failing to disclose anything to the contrary. Failing
to perform his promise of September 18, 1903, to marry
appellee June 15, 1904, he could, after the latter date,
have been compelled to respond to appellee in damages
for its breach. The epilepsy of appellee, of which ap-
pellant, having knowledge at the time of the making
of the marriage promise, would have been no defense
in bar of such action; at most it could have been
urged in diminution of the damages to be awarded.

Wendell v. Wendell, 30 App. Div. Sup. Ct. N. Y.
447, is strongly in point, overriding appellant's con-
tention. There the representation was that the woman
had undergone a serious surgical operation, the nature
of which she did not disclose, nor does it appear that
she was pressed to do so. It developed that the opera-
tion she underwent deprived her of her ovaries and
consequently disabled her from bearing children. As
the procreating of the human species is regarded, at
least theoretically, as the primary purpose of mar-
riage, it would seem that Wendell's expectation of add-
ing to his lineage, which he might reasonably have
anticipated to flow from this union, was rendered im-
possible. This might be regarded as a hardship as well
as a poignant disappointment, yet there was no fraud.
He might have inquired further as to the nature of

the operation and discovered the fact. What may have been maiden modesty the court refused to adjudge as intentional fraud, sufficient to warrant an annulment of the marriage.

It already appears that the conjugal relation continued uninterrupted between these parties for a period of nine months; that for more than seven months after the recurrence of the epileptic symptoms appellant continued the relationship without complaint, or any attempt to avoid its legal consequences. After a full knowledge of her physical condition and her relapse into epilepsy he saw fit, by his actions, to further ratify the contract. The doctrine of estoppel, as applied to these facts, is a sufficient barrier to his now seeking a rescission of that contract.

No charge is made that appellee was not able to or did not perform the obligations and function of matrimony, and from the fact of cohabitation continuing over so long a space of time, such function, in the absence of averment to the contrary, will be presumed to have been performed.

The trend, of all the well-considered authorities seems to be that, when the party to the marriage contract complained against is able to fulfill the obligations imposed by marriage, and perform the function of sexual copulation without, in so doing, involving or imperiling the health of the conjugal partner, the full measure of responsibility under the contract is fulfilled. As said in Fisk v. Fisk, 6 App. Div. N. Y. 432: "If when the relation is entered into the party is competent to make that contract, is mentally competent to do the duties which the contract involves, and physically able to meet its obligations, nothing more can be required, and however the other party may be disappointed as to physical or mental characteristics which he or she expected would exist, such disappointment is no ground for setting aside the contract which the public good requires should be rendered indissoluble except for the gravest reasons."

Glenn v. Glenn, 70 App. Div. N. Y. 576, was a case where the wife sought to annul the marriage contract because the husband had falsely and fraudulently concealed the fact that he had sustained for years an illicit relationship with another woman, by whom he had raised a brood of bastard children, but the court refused to interfere, and said: "What amounts to such a fraud as would authorize a judicial decree annulling a marriage was not and cannot be defined in general terms, but it has been regarded as a fraud relating to the essentials of a contract of marriage, namely, that the parties are competent to contract and to fulfill the obligations of that contract."

In Foss v. Foss, 12 Allen, 26, the court say: "It may be sufficient to say that the rule is well settled that no fraud will avoid a marriage which does not go to the very essence of the contract, and which is not in its nature such a thing as either would prevent the party from entering into the marriage relation, or, having entered into it, would preclude the performance of the duties which the law and custom impose upon the husband or wife as a party to that contract. 1 Bishop on Marriage and Divorce, sections 183 and 184; Schouler on Domestic Relations, section 27; Reynolds v. Reynolds, 3 Allen, 605. Within that rule it has been held that fraudulent representations of one party as to his birth, social position, fortune, good health and temperament do not vitiate the contract."

The representations alleged to constitute the fraud in this case were mere opinions of a cure, inspired, it may be, by a longing hope for relief from the awful malady with which she was afflicted, based upon an absence for some time of its distressing manifestations. The existence of the disease was known to appellant to have been of long duration, and in the absence of any artifices resorted to by appellee operating to prevent an inquiry on his part, the law put him upon inquiry, and, failing to make any, he must bear the consequences of his imprudence and haste. The elements

of such fraud, which justify an annulment of the marriage contract, are not disclosed by the bill.

Schouler on Domestic Relations, section 23, states the doctrine of fraud thus: "As to fraud, in order to vitiate a marriage, it should go to the very essence of the contract. But what constitutes this essence? The marriage relation is not to be disturbed for trifles, nor can the cumbrous machinery of the courts be brought to bear upon impalpable things. The law, it has been well observed, makes no provision for the relief of blind credulity, however it may have been produced. Fraudulent misrepresentations of one party as to his birth, social position, fortune, good health and temperament, cannot, therefore, vitiate the contract. *Caveat emptor* is the harsh but necessary maxim of the law. Love, however indispensable in an æsthetic sense, is by no means a legal essential to marriage, simply because it cannot be weighed in the scales of justice. So, too, all such matters are peculiarly for the knowledge of the parties themselves, and they are put upon reasonable inquiry."

The maxim *caveat emptor* was the rule to guide appellant in the making of his marriage contract. Failing to avail himself of its opportunities, he is not now permitted to escape the legal consequences of his acts and free himself from its binding conditions, howsoever irksome they may have become. He took his wife for better or for worse; he must be held to the full legal responsibility of his obligation. It is too late now to evade it by aid of the courts.

Gould v. Gould, 78 Conn. 242, is not an authority of binding force in this case. Nor is it in any way to be regarded as of instructing importance, although a divorce was granted for the cause of epilepsy. Epilepsy is made a cause of divorce by the Connecticut statute, but no such statute obtains in this jurisdiction. Neither, in the absence of a statute on this subject, is the argument that the mode of guarding against epilepsy is to forbid sexual intercourse with those afflicted by it, of

any appealing force to us. Such arguments should be addressed to the law-making power, not to its ministers. The courts of this State have followed the common law whenever the marriage contract has been annulled for fraud, but have never adjudicated a representation which in effect and intendment was but the expression of an opinion, to be a fraud justifying an annulment of the marriage contract. Williams v. Wilson, 101 Ill. App. 541.

A very bare-faced and outrageous case of misrepresentation of elements of social standing, piety and virtue, by a woman who proved to be of evil life, and who by wily artifices cheated her husband, a rather unsophisticated farmer, out of valuable property, is disclosed in the opinion of the court in Beckley v. Beckley, 115 Ill. App. 27; but the court, in refusing a decree in this undefended case, said: ''There was neither fraud, error or duress, as known to the law. He got possession of the same flesh and bones he bargained for; there was no error or fraud in that respect; the marriage ceremony was performed; the marriage was consummated; they lived together as husband and wife; they are husband and wife.''

The fraudulent representation which will work an annulment of the marriage contract must be of something essential to the marriage relation. Cummington v. Belchertown, 149 Mass. 223; Kraus v. Kraus, 9 Ohio 515; Lyndon v. Lyndon, 69 Ill. 43.

Appellant's desire to be relieved of the further burden resulting from the marriage, because of appellee's physical affliction, was one apparently inspired long after his marriage, and was not thought of by him at the time he entered into the married state. With full information of her long-standing epilepsy, he made an unconditional promise of marriage at a fixed date. He performed his promise; he followed it with cohabitation. He cannot now, by any such pretext as is here presented, shirk his duty and discard his invalid wife. The marriage relation, which he voluntarily con-

tracted, on grounds of public policy is indissoluble for any reason alleged to have existed at the time of its consummation. The averments of the bill do not constitute fraud for which courts of equity can afford any relief.

The decree of the Superior Court sustaining the demurrer and dismissing the bill for want of equity is affirmed.

*Affirmed.*