<hr />

## PHILIP SEILHEIMER

### *v.*

### MARGARET ANNA SEILHEIMER.

A husband who has had sexual intercourse with the woman who subse·quently became his wife, is not entitled to have his marriage annulled on the ground that she represented herself to be pure when he proposed marriage to her, but who was in fact, at the time of the representation, with child.

<hr />

On final hearing on bill and answer and proofs taken before a master.

*Mr. William E. Skinner*, for complainant.

*Mr. Peter W. Stagg* and *Mr. Abraham D. Campbell*, for defendant.

VAN FLEET, V. C.

The complainant seeks to have his marriage with the defend·ant annulled on the ground of fraud. His bill avers that he was induced to propose marriage to the defendant and to marry her in consequence of her representation that she was chaste, when the truth was that at the very time she made the representation

Seilheimer *v.* Seilheimer.

she was, as she well knew, with child by another man.    He also·
avers that he did not have sexual intercourse with the defendant
until after their marriage.    If the truth of these averments has
been proved to the satisfaction of the court, the complainant is.
entitled to the relief he asks, for it is an established principle of
the law of marriage that a marriage may be annulled in any case.
where it is clearly shown that an innocent man has been fraudu-
lently entrapped into a marriage with a woman whom he be-
lieved to be pure, but who was, in fact, at the time of their mar-
riage, incapable of contracting matrimony with him because she
was pregnant by another man.    This court will extend its aid to·
a husband whose own conduct towards his wife, prior to mar-
riage, has been clean, but who, by fraud, has been put in a posi-
tion where, so long as his marriage remains in force, he must
allow a bastard to bear his name and be compelled to perform.
towards him the duties and obligations of a father.

But a husband, to be qualified to ask relief of this nature·
against the woman whom he has taken as his wife, must be pure.
himself—pure, at least, so far as she is concerned.    *Carris* v. *Car-*
*ris, 9 C. E. Gr. 516 ; States* v. *States, 10 Stew. Eq. 195 ; Cre-*
*hore* v. *Crehore, 97 Mass. 330.*    If he has been guilty of ante-
nuptial incontinence with her, if before marriage he tempted her
and she yielded, he has no right to complain of her impurity or
deception.    He is just as unclean as she is.    He has made him-
self acquainted with her weakness, and knows, from personal ex-
perience, that she is unchaste ; if, with this knowledge, he volun-
tarily contracts matrimony with her and it afterwards turns out
that she was, at the time of the marriage, with child by another
man, while it must be admitted his situation is a very unfortunate
one, it is, nevertheless, obvious that he is not in a position where
he has a right to make complaint against her.    In point of moral
purity he does not stand a whit higher than she does ; he cannot
be heard to accuse her, for he is a participant in her crime ; he
cannot say he was deceived, for he knew she was unchaste ; he
may say he did not know all, but he knew enough.    He knew·
he was taking to his bed a woman who had fallen, at least once,.
and the man who, with such knowledge, takes the woman who·

.has yielded to him as his wife, should be held, both on the ground of good morality and sound policy, to have accepted all the risks. Mr. Justice Bedle, in pronouncing the opinion of the court of errors and appeals in *Carris* v. *Carris*, said, in defining what frauds would and what frauds would not be sufficient to justify a decree annulling a marriage, that a " mistake of the husband as to the paternity of a child born after marriage but begotten before, where he himself had been guilty of criminal lewdness towards his wife before marriage," was not sufficient to entitle the husband to be relieved from the marriage bond. It may be that it would be entirely just to declare, in a case where it was .shown that a pregnant woman, conscious of her condition, had lured a man into having sexual intercourse with her for the very purpose of compelling him to marry her, and thus place him in a position where he would be compelled to perform the duties of a father towards her bastard offspring, that if she succeeded her husband would be entitled to have the marriage annulled on the ground that she had enticed him to commit the wrong as the means .by which she made her fraudulent purpose effectual against him. 'This case, however, presents no such question, and it will be quite :time enough to consider whether such a doctrine shall be declared .or not when a case arises which makes its consideration necessary.

These parties were married on the 3d of August, 1884. Their :betrothal took place less than two weeks before. The complain- .ant was twenty-six years of age at the time of the marriage, and the defendant eighteen. The defendant gave birth to a child on the 11th of December, 1884, a period a little over four months after the marriage. The proofs show that the child was fully developed, having been born after the full period of gestation. Conception, must, therefore have taken place early in March, 1884, unless nature, in this instance, departed from her usual course. There is no evidence which will warrant the belief that -the parties had had an opportunity to have sexual intercourse with each other prior to the 21st of April, 1884. About that time the defendant went to live with the complainant's brother as a .servant. The complainant also worked for his brother, and was a member of his brother's family. If the paternity of the defend-

ant's child was the decisive question of the case, there might be difficulty, in the present condition of the proofs, to find sufficient evidence to lead the mind to an entirely satisfactory conclusion one way or the other on that question. That, however, is not the vital question, but it is, Did the complainant have sexual intercourse with the defendant prior to their marriage?

The evidence of the two witnesses who know what the truth is about this matter, stands in sharp conflict—the complainant swears he did not and the defendant swears he did—but a glance at the whole evidence will leave little doubt which tells the truth. The defendant's evidence is corroborated by that of Mrs. Jennie Huyler. Mrs. Huyler swears that the complainant said to her the day after the child was born that the child could not be his, because "he had had nothing to do with her [the defendant] only from June." The truth of the defendant's evidence is otherwise confirmed. It receives its strongest corroboration from the complainant's own conduct. At the time of the marriage the defendant was nearly five months advanced in pregnancy, and the *fœtus* must then have been so far developed as to perceptibly increase the size of her person, and to render it almost impossible for the complainant to have connection with her without discovering her true condition. It is certain, as pregnancy advanced, that it was impossible for him to lie with her night after night, as he did, without becoming acquainted with the fact that she must soon give birth to a child. He says the first knowledge he obtained that his wife was with child came to him from his wife about a month after their marriage. She then told him she was pregnant. Prior to this he had discovered nothing himself. When, on the 11th of December, his wife gave birth to a child, though he knew that only a little over four months had elapsed since their marriage, and that if it was true that their ante-nuptial relations had been pure, the child could not be his, yet neither by word nor act did he evince surprise at the birth of the child, or doubt about its paternity. When he left his wife on the morning the child was born he kissed her good-bye, went away to his work and returned in the evening. When he returned he still did nothing, by word or act, which indicated that he had the

slightest doubt concerning the paternity of the child. That night he slept on the same bed on which his wife and the child lay. The next morning, at the suggestion of his brother, he sent a physician to examine the child to see if it had run the full period of gestation, and it was not until after he had received the physician's report, stating that the child had not been born prematurely, that he told his wife the child was not his, and that he intended to cast her off.

This conduct will bear but one explanation. Up to the time he received the physician's report he believed the child to be his, or if he had doubts on that subject the evidence which gave rise to them was not strong enough, in his view, to justify the course he adopted after he received the physician's report. And yet, if his ante-nuptial relations with the defendant had been pure, he knew, the moment she gave birth to a living child, that the child could not be his. Nay, more. I think it is a thing incredible that the complainant should have occupied the same bed, night after night, with the defendant, and had sexual intercourse with her repeatedly after their marriage, without discovering that she was so far advanced in pregnancy as to render it almost absolutely certain that conception must have taken place prior to their marriage, or without having discovered enough respecting her condition to have created in his mind the most distressing doubts whether the child she was carrying in her womb was not the seed of another man. And if doubts on such a subject had arisen in his mind, it may be that he possessed sufficient strength of will to keep them to himself until the birth of the child; but the moment the child was born, and his doubts were thus confirmed, his sense of wrong would have been so acute that it would have struggled for quick and vehement expression, and he would instantly have denounced his wife as a vile wretch, for attempting to fasten upon him her spurious issue, and the child as a bastard. His conduct, both before and after the birth of the child, is utterly irreconcilable with his statement that his relations with the defendant, prior to their marriage, were chaste; its effect, on the contrary, is, in my judgment, so strongly confirmatory of the de-

Jersey City *v.* Central R. R. Co.

fendant's evidence on this point, as to establish the substantial truth of her statement.

On a careful consideration of the whole evidence, I am convinced that the complainant had sexual intercourse with the defendant prior to their marriage. This being so, the complainant must, in consequence of his own impurity, be denied the relief he asks.

His bill will be dismissed, with costs.