DIOMIRA A. NOCENTI, otherwise RUBERTI, petitioner,

*v.*

JOSEPH P. RUBERTI, defendant.

[Decided October 6th, 1933.]
(*Released by court for publication January 6th, 1939.*)

*Messrs. Carey & Lane,* for the petitioner and exceptant.

FALLON, V. C.

This matter is before the court on exceptions to special master's report pursuant to rule 113. I have concluded, as a result of my consideration of the matter *sub judice,* that the exceptions to the special master's report should be sustained, and that the prayer of the petitioner that the marriage between her and the defendant be decreed null and void for the cause set forth in the petition should be granted. I will advise a decree accordingly. The proofs in the case satisfactorily manifest, in my judgment, that the defendant induced the petitioner to marry him upon the promise and agreement that within a year thereafter he would marry her according to the rites of the Roman Catholic Church of which both petitioner and defendant are communicants. I deem it unnecessary for the purpose of the matter *sub judice* to com-

ment upon the proofs herein, or the report of the special master with reference thereto other than to say that it appears that the petitioner and the defendant went through a civil marriage ceremony on May 11th, 1930, which was performed by a justice of the peace with the understanding and on the express promise of the defendant that he would subsequently have a religious marriage ceremony performed according to the rites of the Roman Catholic Church of which both the petitioner and the defendant are communicants. There is ample corroboration in the proofs to satisfy me that the defendant prevailed upon petitioner to go through a civil marriage ceremony with him upon his promise that he and the petitioner would subsequently be married according to the rites of the church of which both are communicants. The proofs manifest that notwithstanding her entreaty that he comply with his promise in such respect, he refused so to do. The parties did not publicly announce their marriage, nor did they make same known to their friends or acquaintances. In *Cox* v. *Cox, 110 Atl. Rep. 924,* Vice-Chancellor Stevenson held that an unconsummated marriage, which is effected by fraud of any kind whatsoever which would render a contract voidable, is voidable at the option of the injured party, if promptly disaffirmed before any change of status has occurred. No change of status has occurred in the matter *sub judice.* Where, as in the case *sub judice,* a man as an inducement for a woman to enter into a civil marriage ceremony with him, which for reasons of their own they wished to keep secret for a time, promised he would thereafter go through a religious marriage ceremony with her according to the rites of the Roman Catholic Church of which both were communicants, his subsequent refusal to have such religious ceremony performed was fraud upon her for which this court should decree annulment of the marriage, upon her prayer therefor, and particularly where as in the instant case the marriage was not consummated. It is manifest from the proofs herein that if it were not for the aforesaid representation made by the defendant to the petitioner that if she consented to have a civil marriage ceremony performed that a religious marriage

ceremony would follow, she would not have entered into marriage with him. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement, and without which such other would not have done so, justifies the court in annulling the agreement. *Ysern* v. *Horter, 91 N. J. Eq. 189* (at *pp. 192, 193*); *110 Atl. Rep. 31*. In *Bolmer* v. *Edsall, 90 N. J. Eq. 299* (at *p. 300*); *106 Atl. Rep. 646,* it was held that since the status of marriage is conferred by contract, and since for voiding contracts equity has jurisdiction over all questions of fraud, this court, in an appropriate case, would pronounce such marriage void. See *Carris* v. *Carris, 24 N. J. Eq. 516.* See, also, *Vanderbilt* v. *Mitchell, 72 N. J. Eq. 910* (at *p. 918*); *67 Atl. Rep. 97.* In *Bolmer* v. *Edsall, supra,* it was held that the court of chancery under its general power to annul fraudulent contracts, has jurisdiction to annul a contract of marriage for sufficient fraud. What is *sufficient* fraud must be considered and determined in each particular case. I am of the opinion that in the case *sub judice* there is manifest *sufficient* fraud to warrant the annulment of the *unconsummated marriage* of the petitioner and defendant herein, and that such annulment will not be "against sound considerations of public policy." See *Ysern* v. *Horter, supra* (at *p. 204*). A number of New York cases, although based upon code provisions, have held that where a wife consented to enter into a civil marriage ceremony on the husband's promise to subsequently have a Hebrew religious ceremony performed, and the husband thereafter absolutely refused to do so the wife was entitled to a decree annulling the marriage, it appearing that she had never cohabited with the husband. *Watkins* v. *Watkins, 107 App. Div. 489; 189 N. Y. Supp. 860; Rubinson* v. *Rubinson, 181 N. Y. Supp. 28; Rozsa* v. *Rozsa, 191 N. Y. Supp. 868.* Such cases clearly indicate the tendency to relieve an innocent party from marriage contracts induced by fraudulent representations. In my judgment the rule of law as stated in such cases is applicable and should be applied to the case *sub judice.* It appears to me from the proofs herein that the petitioner would not have consented

to the marriage ceremony conducted by a justice of the peace if she had known that a material representation, entering into the reason for her consent therefor, that is, a religious ceremony to follow the civil ceremony, was untrue, and I know of no good reason for excepting a marriage contract from the general rule. In *Watkins* v. *Watkins, 189 N. Y. Supp. 860* (at *p. 863*), the court said: "Here the marriage has not been consummated, and I see no reason why it should not be annulled, and, if that relief be not afforded, plaintiff will be obliged to waive her religious scruples and consummate the marriage without the promised religious ceremonial marriage, or remain bound to the defendant and deprived of the free right she had to marry according to her religion or to remain single. Where the marriage has not been consummated, it has been held that it "is so inchoate and incomplete that the status of the parties is similar to that of parties to an executory contract, and it may be annulled without violating any considerations of public policy." Citing *DiLorenzo* v. *DiLorenzo, 75 N. Y. Supp. 878,* cited with approval in *Svenson* v. *Svenson, 178 N. Y. 54; 70 N. E. Rep. 120.* In *Ysern* v. *Horter, supra* (at *p. 202*), Vice-Chancellor Stevenson quoted from *Nels. D. & S. § 605* as follows: "Before consummation, the parties stand upon almost the same footing as the parties to an ordinary fraud. * * * Where there has been no consummation, any fraud which would be sufficient to annul a contract should in reason be sufficient to annul a marriage ceremony. No satisfactory reason of the law will justify the courts in declaring valid such a contract of marriage when tainted with fraud or duress, where the only effect will be the punishment of the innocent and the confiscation of his or her property by the deception. If the marriage is declared valid, it will exist in name only, preventing both parties from marrying again and bringing the marriage relation into disrepute. Every reason for relief from fraud is applicable here, where a denial of relief is fraught with evil consequences much greater than those flowing from ordinary contracts." Such I consider to be particularly applicable to the case *sub judice.*