JOAN EDITH AKREP, PETITIONER–APPELLANT, v.
JOSEPH PATRICK AKREP, DE-
FENDANT–RESPONDENT.

Argued December 13, 1948—Decided January 17, 1949.

*Mr. Charles Blume* argued the cause for petitioner-appellant. No appearance for defendant-respondent.

The opinion of the court was delivered by

WACHENFELD, J.   An annulment of an unconsummated marriage is sought by the wife, alleging she was induced to consent to a civil ceremony by fraudulent representations made by the husband that there would thereafter be a religious ceremony.

The parties met while attending night school and agreed to marry in the Catholic church sometime in the month of June 1947, but in April the respondent asked her to go through a civil ceremony "so he would have me as his wife in June." She was a Catholic and he represented himself to be of the same religious faith, which was not so.

After the civil ceremony the parties partook of a dinner and then parted. They remained separated and when June arrived, although asked to do so, he refused to have a religious ceremony. She attempted several times to prevail upon him to keep his agreement, without success, and then filed her petition. She testified she would not have married had she known he would not keep his promise to have a church wedding.

No opinion was written below but the record indicates the petition was dismissed because the court concluded there was no proof that the defendant "determined before the marriage not to go through with the ceremonial marriage." A careful study of the record compels us to conclude otherwise. There was both ample proof and sufficient corroboration in this respect, and the fact that he did not intend to keep his original promise when he made it was testified to by the petitioner as well as another witness.

In *Carris v. Carris*, 24 *N. J. Eq.* 516 *(E. & A.* 1873*)*, where an annulment was asked based on fraud, the court said:

"The general principle of the law is, that fraud in a material part, vitiates a contract, and the only reason why it does not apply with full force to the marriage contract is, that marriage is *sui generis* in many respects, and should not be vitiated even if fraudulent, when against 'good policy, sound morality, and the peculiar nature of the relation.' To be free from that restriction, the fraud must be of an extreme kind, and in an essential of the contract."

The fraudulent concealment of pregnancy at the time of marriage was there described as "sufficient fraud," while in *Crane v. Crane*, 62 *N. J. Eq.* 21 *(Ch.* 1901*)*, where the bill sought a decree annulling the marriage for an intentional misrepresentation of the existence of á foul disease, the court held the fraud relied upon "affected an essential of the marriage relation."

That character of fraud is required in annulment proceedings where cohabitation ripened the marriage to a public status creating a public concern and policy. Although in any action for divorce or annulment the public is always a party and has a real interest, *Armour v. Armour*, 138 *N. J. Eq.* 145 *(E. & A.* 1946*)*, in unconsummated marriages the rule is altered and modified for the reasons best expressed in 1 *Bishop, Mar., Div. & Sep., Sec.* 456:

"Though marriage becomes valid before consummation, still the non-consummated status, wherein unborn children and the community have not yet acquired thé specially grave and weighty interests, is very different from the consummated one. So, that no principle appears—not now inquiring how the authorities are—which would justify a court in refusing to pronounce void the non-consummated marriage for ordinary fraud."

The American cases and text writers are in substantial agreement to the effect that an unconsummated marriage is little more than an engagement to marry and where effected with fraud which would render a contract voidable, is voidable at the option of the injured party if promptly disaffirmed before any change of status has occurred. *Ysern v. Horter*, 91 *N. J. Eq.* 189 *(Ch.* 1920*)*. Here Vice Chancellor Stevenson observed:

"The gist of the decision in the *Carris Case* is tersely stated by Chancellor Walker in the case of *Bolmer v. Edsall*, 90 *N. J. Eq.* 299, 300, as follows: 'The court of errors and appeals held that the court

of chancery, under its general power to annul fraudulent contracts, has jurisdiction to annul a contract of marriage for *sufficient* fraud' (Italics mine). What is fraud in respect to the 'essentials' of marriage, or, to use the broader term, what is 'sufficient fraud,' I think remains to-day the subject of ascertainment in every case brought before this court in which the complaining spouse alleges that his or her consent to a marriage was induced by the defendant's fraud."

As the public concern is diminished, so too is the quality and kind of the required fraud lessened in a non-consummated marriage and may, according to the authorities, be any fraud which would render a contract voidable. *Dooley v. Dooley*, 93 *N. J. Eq.* 22 *(Ch.* 1921*).*

■ Reflecting on the principles thus established and taking cognizance of the proof here submitted that the respondent prevailed upon the appellant to go through a civil ceremony upon his promise that they would subsequently be married according to the rites of the church of which she was a member, there was a fraud justifying the annulment of the marriage. A misrepresentation of a sufficient fact induced the petitioner to enter into an agreement which she would not otherwise have consented to. Each case must be evaluated and determined by its own facts and circumstances. Although the marriage here was valid without consummation, still the non-consummated status which was corroborated by the testimony of a physician, contrary to the finding in *Woodward v. Heichelbech*, 97 *N. J. Eq.* 253 *(Ch.* 1925*),* eliminates much of the concern of public policy which might otherwise predominate.

If the proofs are sufficient—and we have so found—no principle appears which would warrant our courts in refusing to set aside a non-consummated marriage for the fraud here perpetrated.

In a very similar factual situation involving a fraudulent misrepresentation as to a subsequent religious ceremony, the Court of Chancery in *Nocenti v. Ruberti*, 17 *N. J. Misc.* 21 *(Ch.* 1933*),* said:

"What is *sufficient* fraud must be considered and determined in each particular case. I am of the opinion that in the case *sub judice* there is manifest *sufficient* fraud to warrant the annulment of the *unconsummated marriage* of the petitioner and the defendant herein, and that such annulment will not be 'against sound considerations of public policy.'"

██ The decree below dismissing the petition will be reversed and the record remanded to the Superior Court, Chancery Division, there to be dealt with in a manner consistent with this opinion. The title in this cause is defective. It is a matter of form only but should be made to comply with the procedure as specified in *Dooley v. Dooley, supra.*

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance:* None.