10 N.J. Super. 432 (1950)
77 A.2d 273
RUTH S. RHOADES, PLAINTIFF-RESPONDENT AND APPELLANT,
v.
E. RALPH RHOADES, DEFENDANT-APPELLANT AND RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1950.
Decided December 6, 1950.
*433 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Samuel A. Larner argued the cause for the plaintiff-respondent and appellant (Messrs. Budd & Larner, attorneys).
*434 Mr. Robert R. Daly argued the cause for the defendant-appellant and respondent (Messrs. Daly, Hillis, Hall & McCormick, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
The plaintiff, Ruth S. Rhoades, appeals from an order of the Chancery Division denying maintenance pendente lite and the defendant, E. Ralph Rhoades, appeals from the judgment dismissing his counterclaim for annulment of the marriage.
The parties were married on July 25, 1947, and cohabited thereafter until August, 1948, on which latter date the defendant refused to longer maintain the marital relationship with his wife, although they continued to occupy the same apartment. The plaintiff's complaint seeks separate maintenance on the ground of abandonment and non-support. The defendant's answer alleges that his refusal to further live with and support his wife is justified, asserting that their marriage was void because of certain false representations made to him by his wife. The defendant asserts in his counterclaim praying for an annulment of the marriage, that to induce him to marry her, plaintiff at and prior to the performance of the marriage ceremony, falsely represented to him that she had borne a male child by him; that defendant agreed to and did enter into said marriage "solely and only because of her representing that she had said child by him;" that he was ignorant of the falsity of this representation until plaintiff's confession thereof in August, 1948; that thereupon he immediately separated from her and refused thereafter to continue the marital relationship. On November 18, 1949, the court denied plaintiff's application for alimony pendente lite, from which order no appeal was taken. A similar application was also denied on April 21, 1950. Following the submission of affidavits by the parties and oral argument, plaintiff's application for a dismissal of defendant's counterclaim and the entry of summary judgment thereon on the ground that it did not set forth a cause of action, was granted.
*435 The affidavits submitted to the court reveal that in 1945, prior to their marriage, the parties indulged in sexual intercourse; that in June, 1943, the defendant married another woman, from whom he obtained a divorce on March 26, 1947; that the plaintiff represented to defendant that as the result of their illicit relationship, a child was born and relying upon the truthfulness thereof, he married her on July 25, 1947; that the reason she did not tell her husband of the child's birth previously, was because she did not want to disturb the peace and harmony of his other marriage and she purposely delayed so informing him until after he had obtained the divorce heretofore mentioned; that the defendant repeatedly made inquiry of his wife as to the whereabouts of the child and was given several contradictory stories, which upon inquiry, turned out to be false; and that actually no such child was ever born. Defendant concedes that the plaintiff was not promiscuous. The parties raise no procedural questions as to the manner in which the application for summary judgment of dismissal of the counterclaim was presented and decided.
The question to be determined is whether the allegations of the counterclaim set forth such fraud as will justify the voiding of their marriage. As to what false representations will constitute fraud sufficient to justify the annulment of a marriage have been considered in a number of cases decided by the courts of New Jersey. At the outset, it must be conceded that the cases in the various jurisdictions are not in accord, but we are inclined to think that the disagreement arises over whether the rule applying to ordinary contracts shall prevail or the rule that the marriage contract is one in which the public is concerned and, therefore, to justify annulment, there must be proof of fraud of an extreme character affecting its very essence. The controlling New Jersey rule is stated in the leading case of Carris v. Carris, 24 N.J. Eq. 516 (E. & A. 1873), in the following language:
"The general principle of the law is, that fraud in a material part, vitiates a contract, and the only reason why it does not apply with full force to the marriage contract is, that marriage is sui generis in *436 many respects, and should not be vitiated even if fraudulent, when against `good policy, sound morality, and the peculiar nature of the relation.' To be free from that restriction, the fraud must be of an extreme kind, and in an essential of the contract."
The Carris case has been cited with approval in numerous decisions, the most recent of which is Akrep v. Akrep, 1 N.J. 268 (Sup. Ct. 1949). In New Jersey, proof of fraud sufficient to vitiate ordinary contracts does not apply to the marriage contract. Carris v. Carris, supra; Akrep v. Akrep, supra. Nor is annulment justified where there has been premarital incontinence. Carris v. Carris, supra; States v. States, 37 N.J. Eq. 195, 196 (Ch. 1883); Seilheimer v. Seilheimer, 40 N.J. Eq. 412, 413 (Ch. 1885); Trimpe v. Trimpe, 65 A. 744 (Ch. 1907, not officially reported); Lindquist v. Lindquist, 130 N.J. Eq. 11 (E. & A. 1941). A consummated marriage will not be annulled where the injured party has had ample time to make thorough inquiry as to the truth or falsity of the representations that induced him to enter into the marriage contract and fails to do so. See States v. States, supra; Woodward v. Heichelbech, 97 N.J. Eq. 253 (Ch. 1925). Mr. Justice Heher, speaking for the Court of Errors and Appeals in the Lindquist case, supra, stated: "In regard to continence, as well as to other personal traits and attributes of character, it is the duty of a party to make due inquiry beforehand, and not to ask the law to relieve him from a position into which his own indiscretion or want of diligence has led him." Fraudulent representation sufficient to justify its annulment is the subject of ascertainment in every case. Akrep v. Akrep, supra; Ysern v. Horter, 91 N.J. Eq. 189 (Ch. 1920); Bolmer v. Edsall, 90 N.J. Eq. 299, 300 (Ch. 1919); Nocenti v. Ruberti, 17 N.J. Misc. 21 (Ch. 1933).
The only case cited by defendant in support of his contention is the case of Di Lorenzo v. Di Lorenzo, 174 N.Y. 467, 63 L.R.A. 92, 95 Am. St. Rep. 609, 67 N.E. 63. The Di Lorenzo case rests upon a different construction of the rule of law applicable to the marriage contract than that prevailing in our State. The New York courts hold, as it did in the Di Lorenzo case, that proof of fraud sufficient to set aside *437 an ordinary contract is all that is required to terminate a marriage contract. In the Di Lorenzo case, the Court of Appeals in reversing the Appellate Division of the Supreme Court, which had refused to annul the marriage, stated:
"The statutes of this state declare that marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties, capable in law of contracting, is essential. 2 Rev. St. (1st ed.) 138. It certainly does differ from ordinary common-law contracts by reason of its subject-matter and of the supervision which the state exercises over the marriage relation which the contract institutes. In such respects it is sui generis. While the marriage relation, in its legal aspect, has no peculiar sanctity as a social institution, a due regard for its consequences and for the orderly constitution of society has caused it to be regulated by laws in its conduct as in its dissolution. Judge Story said of it that it is `something more than a mere contract. It is rather to be deemed an institution of society, founded upon the consent and contract of the parties; and in this view it has some peculiarities in its nature, character, operation, and extent of obligation different from what belong to ordinary contracts.' Story's Conflict of Laws, § 108, note. While, then, it is true that marriage contracts are based upon considerations peculiar to themselves, and that public policy is concerned with the regulation of the family relation, nevertheless our law considers marriage in no other light than as a civil contract. Kujek v. Goldman, 150 N.Y. 176, 44 N.E. 773, 34 L.R.A. 156, 55 Am. St. Rep. 670."
The fraudulent representation relied upon here by the defendant, did not, in our opinion, amount to the species of fraud contemplated by the New Jersey rule. See States v. States, supra; Seilheimer v. Seilheimer, supra; and Lindquist v. Lindquist, supra. In the States case the court held that the husband who had premarital sexual intercourse with his wife was not entitled to have his marriage annulled, on the ground that she falsely represented herself to be pregnant by him, but who, in fact, at the time of the representation, was with child by another man. In the Seilheimer case, which is factually analogous to the States case, the annulment of the marriage was denied. In the Lindquist case, Mr. Justice Heher, in an excellent opinion, discusses the prevailing rule of law in New Jersey, reviews the cases pertaining thereto and supports the rule laid down in the Seilheimer and States cases.
*438 A court should not annul a marriage on the ground of fraud except in extreme cases, where the particular fraud goes to the very essence of the marriage relation, and especially is this true where, as here, the marriage has been fully consummated and the parties have actually assumed all the mutual rights and duties of the relation. In such a case considerations of public policy intervene, and our courts are loath to annul a marriage. An executed contract of marriage, accompanied by full consummation, differs in many respects from ordinary contracts. It creates a status which society is interested in maintaining. Marshall v. Marshall, 300 Pac. 816 (Calif. Sup. Ct. 1931), 75 A.L.R. 661. "In that contract of marriage which forms the gateway to the status of marriage, the parties take each other for better, for worse, for richer, for poorer, to cherish each other in sickness and in health. Consequently, a mistake, whether resulting from accident, or in general fraudulent practices, in respect to character, fortune, health, or the like, does not render void what is done. A man who means to act upon such representations should verify them by his own inquiries. The law presumes that he uses due caution in a matter in which his happiness for life is so materially involved, and it makes no provision for the relief of a blind credulity, however it may have been produced." Schouler on Domestic Relations, § 23. Accepting, as we must, the defendant's contention that the plaintiff falsely represented the birth of a child, it necessarily follows that no such child was born as a consequence of their premarital sexual relations. How then, can defendant successfully contend that the very essence of the marriage contract has been affected? We fail to perceive the force of such an argument.
With respect to plaintiff's appeal from the order denying alimony pendente lite, we are of the opinion that it should be affirmed. Plaintiff did not take an appeal from the first order denying such an allowance. The court later permitted a re-hearing and the application was again denied. Such an allowance is discretionary. Judge McLean had the *439 parties before him with a disclosure of the facts as to their respective financial status and incomes, from which it appears that the wife has been regularly employed since her husband abandoned her and has lived in the apartment rented by him. Our review of the record satisfies us that there was no abuse of discretion by the court.
The judgment is affirmed, with costs.