124 N.J. Super. 101 (1973)
304 A.2d 774
ANNE BILOWIT, FALSELY KNOWN AS ANN DOLITSKY, PLAINTIFF,
v.
MICHAEL DOLITSKY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 2, 1973.
*102 Mr. Louis Forman attorney for plaintiff.
McKENZIE, J.C.C., Temporarily Assigned.
On the representation of defendant that he was a practicing Orthodox Jew, plaintiff married him on January 23, 1971. Thereafter plaintiff discovered that defendant did not in fact adhere to the tenets of Orthodox Judaism and had misrepresented his religious connections to plaintiff because he was in love with her, wished to marry her, and was aware that she would not marry him otherwise. The marriage was admittedly consummated. Plaintiff seeks an annulment, and her cause of action is not contested.
Our courts have long required a more substantial quantum of fraud to entitle a party to an annulment where the marriage has been consummated than where it has not. Any kind of fraud which would render a contract voidable may be the basis for the annulment of a marriage similarly *103 infected. Ysern v. Horter, 91 N.J. Eq. 189 (Ch. 1920); Caruso v. Caruso, 104 N.J. Eq. 588 (Ch. 1929).
Where the marriage has been consummated, the fraud of defendant will entitle plaintiff to an annulment only when the fraud is of an extreme nature, going to one of the essentials of marriage. Akrep v. Akrep, 1 N.J. 268 (1949); Costello v. Porzelt, 116 N.J. Super. 380 (Ch. Div. 1971); Pisciotta v. Buccino, 22 N.J. Super. 114 (App. Div. 1952). The language is now embodied in N.J.S. 2A:34-1(d).
As to what constitutes the "essentials" of the marriage relation, it has been observed that the guidelines are vague and not fully delineated by our decisional law. Costello v. Porzelt, supra, 116 N.J. Super. at 383-385. This is as it should be. What is essential to the relationship of the parties in one marriage may be of considerably less significance in another. For this reason a determination of whether a fraud goes to the essentials of the marriage must rest upon the facts in each case. Ysern v. Horter, supra.
Here plaintiff, corroborated by her rabbi, testified that she has been a deeply religious Orthodox Jew throughout her life. Her beliefs were made known to defendant and he, representing himself to be an Orthodox Jew, agreed to follow the requirements of that religion. As testified to by the rabbi, they are many and far-reaching, touching virtually all aspects of everyday life. Although for a few weeks following the marriage defendant adhered to them, it soon became apparent that he was not in fact an Orthodox Jew, and never sincerely intended to follow that religion. Plaintiff promptly separated from him.
The reported cases on this subject are meager. In both Akrep v. Akrep, 1 N.J. 268 (1949), and Nocenti v. Ruberti, 17 N.J. Misc. 21 (Ch. 1933), our courts granted annulments where the defendant misrepresented his intention to enter into a religious ceremony of marriage following the civil ceremony. However, in both cases the marriage was not consummated.
Numerous cases in New York indicate that annulments have been granted under circumstances similar to those in *104 the instant case. See for example, Williams v. Williams, 194 Misc. 201, 86 N.Y.S.2d 490 (Sup. Ct. 1947). Cf. Taylor v. Taylor, 181 Misc. 306, 47 N.Y.S.2d 401 (Sup. Ct. 1943). This court is aware, however, that these decisions were reported during the period preceding the reform of the New York divorce law, and this court is satisfied that under the circumstances they should not be given great weight here at this time. See Note "Annulments for Fraud  New York's Answer to Reno?" 48 Columbia L. Rev. 900 (1948).
Although our courts have fixed the amount of fraud required to entitle one to an annulment where the marriage has been consummated, we have nevertheless long viewed as expandable any list of the types of fraudulent conduct for which relief may be afforded:
There ought always to be an indisposition in every court to weaken the force and sacredness of the marriage tie. That consideration should induce great carefulness, but should not deter us from advancing where principle leads us, although before, in our courts, the objective point has not been attained. The fraud in this case was so gross and far-reaching, as to avoid the consent, and for that reason the marriage must be declared null and void, ab initio. [Carris v. Carris, 24 N.J. Eq. 516, 526 (E. & A. 1873)]
See also, Costello v. Porzelt, supra.
So it is in the instant case. To plaintiff the religious beliefs and convictions of her husband were essential to her marriage. She could not have properly performed the duties of a wife and mother, following the rules and teachings of her faith, without the support of a husband holding the same beliefs. Defendant, having substantially and knowingly misrepresented the same to her, and plaintiff having relied thereon in entering into the marriage, this court holds the fraud to which plaintiff was subjected to be "gross and far-reaching," within the meaning of Carris. In accord: State Compensation Fund v. Foughty, 13 Ariz. App. 381, 476 P.2d 902 (Ct. App. 1970).
*105 That a subjective test may render more difficult the fact-finding process of the court should not prevent a litigant from obtaining relief where justice dictates. Our requirement that the fraud alleged must be proved by clear and convincing evidence should be noted. See Williams v. Witt, 98 N.J. Super. 1 (App. Div. 1967); Pisciotta v. Buccino, supra.
A judgment for annulment of the marriage will be entered.