265 N.J. Super. 402 (1992)
627 A.2d 683
HITESH PATEL, PLAINTIFF,
v.
VARSHA NAVITLAL, A.K.A. AS VARSHA NAVNITLAL PATEL AND VARSHA NAVNITALAL PATEL, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Family Part Hudson County.
Decided November 30, 1992.
*404 Howard S. Feintuch, for plaintiff (Feintuch, Porwich & Feintuch, attorneys).
Vincent J. Agresti, for defendant.
HEALY, J.S.C.
The plaintiff, Hitesh Patel, has filed a two count complaint seeking an annulment, or in the alternative, a divorce. The defendant, Varsha Navitlal, filed an answer denying only those allegations in the first count which seek an annulment and admitting all allegations of the second count seeking a divorce predicated on the 18-month continuous separation grounds as contained in N.J.S.A. 2A:34-24.
In trial memorandum submitted prior to the taking of any testimony, plaintiff argues that the marriage should be annulled on the grounds that the defendant fraudulently induced plaintiff to *405 marry her solely to gain entry into the United States, offering as proof the concealment of a relationship between the defendant's mother and her paramour. Plaintiff's attorney relies on the provisions of N.J.S.A. 2A:34-1(d), fraud as to the essentials of the marriage and N.J.S.A. 2A:34-1(f), the general equity jurisdiction of the Superior Court as legal support for his argument. On the other hand, defendant takes the position that the annulment should not be granted because the plaintiff was aware of any impediment to the marriage, the marriage was consummated, and any fraud perpetuated against the plaintiff must be proven by clear and convincing evidence. In a pretrial conference, it was conceded by the attorney for the defendant that an annulment might affect the immigration status of the defendant who currently resides with her uncle in North Carolina.
Lying at the heart of this controversy, is the ethnic background of both parties and the social values of another culture. Both the plaintiff and defendant are Asian-Indians. The plaintiff is a naturalized citizen of the United States having resided in the City of Jersey City for eleven years. He is a highly educated individual with a masters degree in engineering.
By way of explanation, the plaintiff testified at trial that there currently exists a caste system in India. The plaintiff further testified that this caste system is predicated on factors such as heritage, religion, economic background and family location. According to plaintiff, in the Indian caste system, individuals occupy a certain status within a particular caste making them more or less desirable as a spouse. The defendant denied knowledge of such a caste system in India.
In the Spring of 1990, the plaintiff traveled to India and contacted a marriage broker for purposes of obtaining a wife of the same caste to live with him in the United States. This was the second marriage of the plaintiff through a marriage broker in India. Shortly thereafter and through the efforts of the marriage broker, the parties personally met twice to discuss marriage and the parties' respective backgrounds. Although from different *406 locations, the plaintiff was satisfied with the defendant as a prospective spouse. In discussing their parents, the defendant informed the plaintiff that her parents were living apart and in different locations. The plaintiff and the defendant married pursuant to a civil ceremony on June 8, 1990. The civil ceremony took the form of signing certain papers in the presence of one another. That night, the marriage was consummated at a hotel.
The plaintiff returned to the United States three days later and began the immigration process by filing a petition for the defendant's entry into the United States. During this period of time, there was continuous correspondence between the plaintiff and the defendant. On August 2, 1991, the defendant received her four-month visa. After the defendant received her visa, the correspondence became less frequent between the parties. The plaintiff testified that the defendant's conduct became suspicious because the defendant sought entry into the United States as soon as possible and because of the defendant's refusal to coordinate travel plans to the United States. The plaintiff admitted that he never purchased the means for transportation of the defendant to the United States at any time.
The plaintiff testified that the defendant insisted on a religious Hindu ceremony to be held in India. The defendant claims it was plaintiff who demanded and paid for the religious ceremony. This agreement was made prior to plaintiff's return to India.
In October, 1991, the plaintiff returned to India. Shortly thereafter, the plaintiff learned that the defendant's mother was living with a person of a different caste while still married to her husband. Her husband resided in another city. The plaintiff testified that this intercaste relationship constitutes a violation of the caste system that has embarrassed both him and his family and had he known of it, he would not have married the defendant. Although the parties met twice before the civil ceremony, the plaintiff admittedly did not inquire as to the relationship between the defendant's mother and other men. Notwithstanding this, the plaintiff married the defendant a second time in a religious Hindu *407 ceremony on November 10, 1991. The plaintiff testified that he was forced to marry the defendant in the Hindu ceremony because of threats against his family by brothers of the defendant the day before the marriage. Although a practicing Hindu, the plaintiff claims he did not understand the Hindu marriage ceremony. Although there is conflicting testimony as to the events following the second marriage, this court finds that the second marriage ceremony was not consummated.
The defendant came to the United States approximately two weeks after the Hindu ceremony prior to the expiration of her visa, arriving in New York while the plaintiff remained in India. The defendant attempted to contact relatives of the plaintiff shortly after arriving in the United States, to secure living arrangements with her in-laws but was unsuccessful. The defendant then and currently resides with her uncle in North Carolina. The parties never attempted to live as husband and wife while in the United States. After plaintiff returned to the United States, he attempted, without success, to have defendant's visa revoked. On March 3, 1992, the plaintiff filed a complaint seeking an annulment, or in the alternative, a divorce.
Marriage is both a legal and social institution, contractual in nature, creating both rights and duties attaching to both parties. It creates status unique in the law subject to the control of the legislature. The contractual undertaking assumed in a marriage has been said to be akin to a partnership. Lindquist v. Lindquist, 130 N.J. Eq. 11, 20 A.2d 325 (E. & A. 1941); Rothman v. Rothman, 65 N.J. 219, 320 A.2d 496 (1974).
Both the grounds for annulment and the grounds for divorce are controlled by statute N.J.S.A. 2A:34-1; N.J.S.A. 2A:34-2. The basic distinction between an annulment and divorce lay in the facts which give rise to the cause of action. In an annulment, the facts which justify a declaration of the court of nullity antecede the marriage itself. In the alternative, the facts which give rise to a dissolution of the marriage arise during the *408 marriage. The petitioner in either case always bears the burden of proof.
Plaintiff seeks a judgment of nullity of the marriage between the parties predicated on the provisions of N.J.S.A. 2A:34-1(d) and (f) theorizing the existence of fraud as to the essentials of the marriage and under the general equity jurisdiction of the Superior Court. The defendant purports to have married the plaintiff for the sole purpose of securing entry to the United States, as well as the defendant's failure to disclose to the plaintiff, the intercaste relationship that existed between defendant's mother and her paramour.
It is undisputed that the first marriage ceremony between the parties was consummated. There is no proof before this court that the first marriage ceremony was defective in any manner. Our courts have long required a more substantial quantum of proof of fraud to entitle a party to an annulment where the marriage has been consummated. The fraud must be of an extreme nature pertaining to one of the essentials of the marriage. Akrep v. Akrep, 1 N.J. 268, 63 A.2d 253 (1949); Posciatta v. Buccino, 22 N.J. Super. 114, 91 A.2d 629 (App.Div. 1952); Costello v. Porzelt, 116 N.J. Super. 380, 282 A.2d 432 (Ch.Div. 1971). To entitle an applicant to an annulment, the proof must be by clear and convincing evidence and not subject to the availability of other inferences. Bilowit v. Dolitsky, 124 N.J. Super. 101, 304 A.2d 774 (Ch.Div. 1973). This rule is equally applicable to the fraud as to the essentials of the marriage as well as its existence prior to the marriage.
The plaintiff traveled to India to marry a woman of the same caste. Through the efforts of a marriage broker, the parties were introduced. After that introduction, the parties met twice to discuss marriage and their respective backgrounds. The relationship between defendant's mother and her cohabitant was not discussed. The plaintiff testified that although from a different location, an alleged material aspect of the caste system, he was satisfied with the defendant as a prospective spouse. Shortly *409 thereafter, the parties married in a civil ceremony. Plaintiff claims that defendant married him for the sole purpose of gaining entry into the United States yet produces no proof of the existence of that intent at the time of, or prior to, the civil ceremony. In fact, both parties testified that it was their intention to live as husband and wife. It was plaintiff's intention to live in the United States. It was defendant's intention to live with her husband as his wife. Both parties had the requisite intent to create a meaningful relationship at the time of the first marriage or civil ceremony as required by law. Faustin v. Lewis, 85 N.J. 507, 427 A.2d 1105 (1980).
Plaintiff proffers a certain course of events which occur after the first marriage ceremony and would have these facts serve as the basis for a circumstantial inference that the only reason why the defendant married the plaintiff was to gain entry to the United States. Such proofs, as the less frequent communication between the parties and the failure to coordinate travel plans, are rejected by this court as proving a preexisting intent on the part of the defendant not to legitimately marry the plaintiff. It was not until four days prior to the expiration of her visa, after a second marriage ceremony and after plaintiff failed to provide transportation for his wife to this country, did the defendant enter the United States. Plaintiff has failed to meet his burden of proof. The request of the plaintiff for an annulment predicated on the presentation of the facts as aforementioned, is hereby denied.
Plaintiff further states that the defendant's failure to disclose the "intercaste" relationship that existed between defendant's mother and her paramour constitutes fraud as to the essentials of the marriage. Because the marriage contract is said to be sui generis in many respects, it is incumbent upon the petitioner, by the applicable standard of proof, to define the essentials of the marriage. Carris v. Carris, 24 N.J. Eq. 516 (E. & A. 1873). In V.J.S. v. M.J.B., 249 N.J. Super. 318, 592 A.2d 328 (Ch.Div. 1991), the court stated, "What is essential to the relationship of the parties in one marriage may be of considerably less *410 significance in another. Therefore, a determination of whether fraud goes to the essentials of the marriage must be decided on a case-by case basis." Id. at 320, 592 A.2d 328.
The unrebutted proofs show that the plaintiff went to India and employed a marriage broker for the sole purpose of securing a spouse of the same caste. The plaintiff knew that differences existed between the parties which could materially affect the caste of the defendant. Notwithstanding these differences, the plaintiff married defendant in a valid civil ceremony. Plaintiff now claims that the intercaste relationship existing within defendant's family, with knowledge and concealment of it by defendant, constitutes fraud as to the essentials of the marriage. The plaintiff relies on the equitable jurisdiction of this Court to annul the marriage.
Misrepresentation or concealment of a fact may well serve as the basis for claiming fraud as to the essentials of the marriage. Tobon v. Sanchez, 213 N.J. Super. 472, 517 A.2d 885 (Ch.Div. 1986). However, the fraud alleged by the plaintiff in this case is not the type of fraud contemplated in our law of such a type to annul a marriage. In Carris, in distinguishing types of fraud, the court clearly held that false representations in regard to family, fortune, or external condition are not sufficient in degree to justify the court exercising its power to annul a marriage for the public policy consideration that a court should only exercise that power in cases when the fraud is of an extreme nature. Although the law of nullity and dissolution continues to evolve, this court holds that the fraud, alleged to exist in this case, is not the type contemplated by our law sufficient in degree to annul a marriage. Nothing on the record in this case suggest that the defendant was unable or unwilling to act as a wife to the plaintiff nor that she did not want to create for herself the status of wife. The parties intended to be married. To grant plaintiff an annulment for reasons which remain outside the control of one of the parties to the marriage would result in a miscarriage of justice. At best, plaintiff's argument rises to the level of a deficiency in a character trait, assuming that this court would even recognize the *411 Asian-Indian caste system. Misconceptions as to character have been held not to support an allegation of fraud upon which an annulment may be based. Lindquist, supra.
Public policy encourages full disclosure of pertinent facts especially in contemplation of entering a bond as significant as marriage. V.J.S. v. M.J.B., supra. Conversely, the law imposes a duty to investigate in matters affecting character. In Lindquist, Justice Heher, writing for a unanimous court, stated
In regard to countenance, as well as to other personal traits and attributes of character, it is the duty of a party to make due inquiry beforehand, and not to ask the law to relieve him from a position into which his own discretion or want of diligence has led him. [130 N.J. Eq. at 20, 20 A.2d 325.]
Prior to the civil ceremony, the plaintiff was aware that not all requisites had been met by defendant to be considered of the same caste. It was incumbent upon plaintiff to conduct further investigation after being placed on notice of any alleged impediments, particularly in light of the fact that the defendant was presented to the plaintiff through a marriage broker. Plaintiff specifically waived any objection to any impediments by his marrying the defendant. Plaintiff is therefore equitably estopped from asserting any grounds of the Asian-Indian caste system as a basis for an annulment of the marriage or that it constitutes an essential of the marriage.
The application of the equitable doctrine of estoppel has been left to the discretion of the trial courts Faustin v. Lewis, 85 N.J. 507, 427 A.2d 1105 (1981). In Kasin v. Kasin, 81 N.J. 85, 405 A.2d 360 (1979), the Supreme Court stated:
The equitable principle of estoppel has been applied broadly and in a wide variety of matrimonial cases. It has been recognized that "in cases involving foreign divorce decrees, as in other situations, . .. the application of the principles of equitable estoppel cannot be subjected to fixed and settled rules of universal application, but rests largely on the facts and circumstances of each particular case." [citations omitted] The equitable rule precluding individuals from attaching foreign divorce decrees "[has] not [been] limited to situations of what might be termed `true estoppel' where one party induces another to rely to his damage upon certain representations ...", Restatement (Second) of Conflict of Laws § 74, Comment b (1971), but has also encompassed situations sometimes termed "quasi-estoppel" where an individual is not permitted to "blow both hot and cold," taking a *412 position inconsistent with prior conduct, if this would injure another, regardless of whether that person has actually relied thereon. [81 N.J. at 94, 405 A.2d 360.]
The Kasin and Faustin cases have alleviated the formal requirements of the doctrine of equitable estoppel in lieu of a more practical approach in the interest of justice and returned discretion as to its application to the trial court. Although plaintiff sought a spouse of the same caste, he accepted a woman with an alleged impediment. Plaintiff accepted a spouse presented to him by a third party (a marriage broker) and conducted no investigation as to those requisites which he testified were essential. Under the facts and circumstances of this case, the plaintiff cannot "blow both hot and cold." Plaintiff's petition for an annulment, predicated on the Asian-Indian caste system, is hereby denied.
Having determined that the first marriage ceremony was valid, this court need not pass upon the effect of the second marriage and all issues attendant thereto which serve only to obfuscate the true intent of the parties herein.
The plaintiff has filed a complaint alleging as grounds 18 months of continual separation with no prospect of reconciliation. Notwithstanding the testimony before the court, the defendant has admitted all allegations of the complaint. This court finds that the parties separated on or about June 11, 1990, three days after the original ceremony when the plaintiff returned to the United States. They have remained separate and apart since that time and there is apparently no prospect for reconciliation. Both parties have lived in separate habitations and have ceased all marital duties and relations toward one another. Ballard v. Ballard, 124 N.J. Super. 462, 307 A.2d 637 (Ch.Div. 1973). The prima facie elements for a divorce having been proven by a preponderance of the evidence as well as the admissions contained in the pleadings, a judgement of divorce will be granted.