JAMES A. LYON

*v.*

SUSANNE B. LYON.

*Opinion filed October 23, 1907—Rehearing denied Dec. 10, 1907.*

1. MARRIAGE—*whether the consent to marriage was procured by fraud is to be determined by law of forum.* In a proceeding to annul a marriage, which took place in a foreign State, upon the ground that the complainant's consent to the marriage was procured by fraud and that under the statute of such foreign State fraud in obtaining consent to a marriage is ground for its annulment, the court of the forum will determine whether the acts of the defendant constituted fraud.

2. SAME—*fraudulent representation must be of something essential to marriage relation.* Fraudulent representations for which a marriage may be annulled must be of something essential to the marriage relation which makes impossible the performance of the duties and obligations of that relation or renders its assumption or continuance dangerous to health or life.

3. SAME—*misrepresenting one's self to be cured of epilepsy is not fraud.* In the absence of a statute of the foreign State where a marriage took place making misrepresentation as to health ground for annulling the marriage, or of a statute having special application, the courts of Illinois will not annul such marriage upon the ground that the wife, in obtaining consent to the marriage, falsely represented that she had been permanently cured of epilepsy and had not had an attack for many years.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

Appellant filed his bill in the superior court of Cook county for the annulment of his marriage with appellee, alleging that on September 18, 1903, at Richford, Tioga county, New York, he agreed to marry her on June 15, 1904; that he had known her for sixteen years prior to their engagement of marriage and about fifteen years before had learned that she was subject to attacks of epilepsy; that at the time of their engagement, with the intention of causing him to enter into it and to marry her, she falsely and fraudulently represented to him that she had been entirely cured of her epilepsy and had had no attacks thereof for more than eight years; that, relying upon said representations and believing them to be true, by reason thereof he entered into said engagement, and on June 15, 1904, still relying upon the truth of said representations, he married her at Richford, Tioga county, New York; that they immediately came to Chicago to live and lived together as husband and wife until March 28, 1905; that on April 7, 1905, he learned for the first time that the representations made to him were false and that she had been an epileptic, subject to fits occurring at irregular though frequent intervals, for more than ten years immediately prior to their marriage, and from that time he has not cohabited with her as her husband; that about six weeks after their arrival in Chicago she had an attack of epilepsy and has since suffered

from several similar attacks, and that, still believing in the truth of her representation, he caused her to receive medical treatment, but she became worse, and on March 30, 1905, suffered from three attacks of epilepsy, and is incurable; that having learned of the falsity of her representations he ceased to live with her, and on April 9, 1905, took her to the home of her parents, in Richford, New York, where she now is; that had he known her true condition he would not have entered into said engagement or married her; that the statutes of New York in force at the time of the engagement and marriage, and now, provide that in case the consent of one of the parties to a marriage was obtained by fraud such marriage may be annulled, and an action for that purpose may be maintained at any time by the party whose consent was so obtained, unless the parties to said marriage have cohabited with full knowledge of such fraud upon the part of the innocent party to the contract; that appellant's consent to said marriage was obtained by the appellee's fraud in making said representations and in concealing from him the knowledge of her epileptic condition, and that by reason thereof said marriage is voidable. The prayer was that the marriage be decreed to be null and void from the beginning. Upon demurrer the bill was dismissed for want of equity. The decree was affirmed by the Appellate Court, and an appeal is now prosecuted to reverse the judgment of affirmance.

CLARK & CLARK, for appellant.

JAMES P. HARROLD, (THEODORE R. TUTHILL, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Appellant's claim is that the rights of the parties are to be determined by the law of New York, where the marriage was contracted, and that by such law this marriage

was subject to be annulled for fraud. Fraud in the State
of New York is not different, we presume, from fraud else-
where. If the bill does not charge conduct which we would
hold fraudulent, we cannot assume that the courts of an-
other State would do so. The bill alleges that the statutes
of New York provide that the marriage may be annulled if
appellant's consent was obtained by fraud. Our inquiry is
therefore whether the bill shows that appellant's consent
was obtained by fraud, and the allegation will be construed
according to the law of Illinois. It is not alleged that any
different definition of fraud has been established by statute
or prevails in New York, or that the statute declares that
a marriage may be annulled for a misrepresentation in re-
gard to the health of one of the parties. The fraud charged
is, that the appellee falsely represented that she was entirely
cured of her epilepsy and had no attack of it in eight years.
So far as her being entirely cured was concerned, that was
essentially a matter of judgment and opinion. The false
representation of fact was, that she had had no attack of the
disease for eight years.

"As to fraud, in order to vitiate a marriage, it should
go to the very essence of the contract. * * * Fraudulent
misrepresentations of one party as to birth, social position,
fortune, good health and temperament cannot, therefore,
vitiate the contract. *Caveat emptor* is the harsh but neces-
sary maxim of the law." (Schouler on Domestic Relations,
par. 23.)

"In that contract of marriage which forms the gateway
to the status of marriage, the parties take each other for
better, for worse, for richer, for poorer, to cherish each
other in sickness and in health; consequently a mistake,
whether resulting from accident, or, indeed, generally, from
fraudulent practices in respect to the character, fortune,
health, does not render void what is done. To this conclu-
sion the authorities all conduct us, but different modes of
stating the reason for it have been adopted. Thus, the qual-

230 — 24

ities just mentioned are said to be accidental, not going to the essentials of the relation; and Lord Stowell, after remarking that error about the family or fortune of an individual, though produced by disingenuous representations, does not affect the validity of the marriage, adds: 'A man who means to act upon such representations should verify them by his own inquiry. The law presumes that he used due caution in a matter in which his happiness for life is so materially involved, and it makes no provision for relief of a blind credulity, however it may have been produced.' " (1 Bishop on Marriage and Divorce, par. 167.)

"It is well understood that error, and even disingenuous representations, in respect to the qualities of one of the contracting parties, as to his condition, rank, fortune, manners and character, would be insufficient. The law makes no provision for the relief of a blind credulity, however it may have been produced." (2 Kent's Commentaries, 77.)

"The degree of fraud sufficient to vitiate an ordinary contract will not afford sufficient ground for the annulment of a marriage. It is not sufficient that the party relied upon the false representations and was deceived or that important and essential facts were concealed with intent to deceive. The marriage relation is a status controlled and regulated by considerations of public policy, which are paramount to the rights of the parties. * * * The fortune, character and social standing of one of the parties are not essential elements of marriage, and it is contrary to public policy to annul marriages for fraud or misrepresentation as to such personal qualities." (19 Am. & Eng. Ency. of Law,— 2d ed.—1184.)

Concealment of the fact that the woman had previously been insane has been held insufficient to justify a decree of nullity of marriage. (*Cummington* v. *Belchertown,* 149 Mass. 223.) So has concealment of kleptomania. (*Lewis* v. *Lewis,* 44 Minn. 124.) Also concealment by a woman of unchastity prior to marriage. (*Leavitt* v. *Leavitt,* 13 Mich.

452; *Allen's Appeal*, 99 Pa. St. 196; *Varney* v. *Varney*, 52 Wis. 120.) Also concealment of a prior marriage. (*Donnelly* v. *Strong*, 175 Mass. 157; *Fisk* v. *Fisk*, 6 N. Y. App. Div. 432.) Also concealment of the birth of an illegitimate child prior to marriage. *Farr* v. *Farr,* 2 MacArth. (D. C.) 35; *Smith* v. *Smith*, 8 Ore. 100.

The fraudulent representations for which a marriage may be annulled must be of something essential to the marriage relation,—of something making impossible the performance of the duties and obligations of that relation or rendering its assumption and continuance dangerous to health or life. *Smith* v. *Smith*, 171 Mass. 404; *Ryder* v. *Ryder*, 66 Vt. 158; *Cummington* v. *Belchertown, supra.*

The case of *Gould* v. *Gould*, 78 Conn. 242, is not inconsistent with these rules, though it was there held that concealment of epilepsy was such a fraud as would justify a decree of divorce under the statute of that State forbidding marriage or sexual intercourse by or with an epileptic, under penalty of imprisonment. The court said that a fraud was accomplished "whenever a person enters into that [marriage] contract knowing that he is incapable of sex·ual intercourse, and yet, in order to induce that marriage, designedly and deceitfully concealing that fact from the other party, who is ignorant of it and has no reason to suppose it to exist. Whether such incapacity proceeds from a physical or a merely legal cause is immaterial. The prohibition of the act of 1895 fastened upon the defendant an incapacity which, if unknown to the plaintiff and by him fraudulently concealed from her with the purpose thereby to induce a marriage, made his contract of marriage, in the eye of the law, fraudulent. * * * The superior court has power to pass a decree of divorce from the bonds of matrimony in favor of a party to a marriage not an epileptic, who has been tricked into it by the other party, who was an epileptic, through his fraud in inducing a belief that he was legally and physically competent to enter into the mari-

tal relation and fulfill all its duties, when he knew that he was not."

The Supreme Court of New York, in *Di Lorenzo* v. *Di-Lorenzo*, 174 N. Y. 467, held that the representation by a woman to a man that she had given birth to a child of which he was the father and which she purported to exhibit to him, when, in fact, she had not given birth to a child, was such fraud as to justify the annulling of a marriage brought about thereby. This representation is similar in kind to that of a pregnant woman who induces a man with whom she has had illicit intercourse to marry her by the false representation that he is the father of her child. But such representation, under such circumstances, does not constitute fraud for which the marriage will be annulled, and we regard the decision in the *Di Lorenzo case* as opposed to the weight of authority. *Franke* v. *Franke*, 18 L. R. A. (Cal.) 375; *Foss* v. *Foss*, 12 Allen, 86; *Crehore* v. *Crehore*, 97 Mass. 330.

The statute of New York mentioned in the bill merely declares the law as it exists in Illinois,—that a marriage procured by fraud may be annulled. The kind and degree of evidence required for such purpose must be determined by the court in which the suit is brought, according to the law of the forum. The bill proceeds on the theory that the appellant's consent to the marriage was obtained by fraud, and sets out the facts constituting the fraud. Whether those facts constitute fraud must be determined by the law of the forum, and the superior court did not err in sustaining the demurrer to the bill. Its decree, and the judgment of the Appellate Court in affirmance thereof, will be affirmed.

*Judgment affirmed.*