(No. 51028.-

JUDITH WOLFE, Appellant, v. JAMES WOLFE, Appellee.

*Opinion filed March 14, 1979.—Rehearing denied May 30, 1979.*

94

Irving Lewis, of Chicago, for appellant.

James E. Wolfe, of Winnetka, *pro se.*

MR. JUSTICE MORAN delivered the opinion of the court:

After Judith Wolfe, plaintiff, filed a complaint for divorce in the circuit court of Cook County, James Wolfe, defendant, counterclaimed for an annulment of the marriage on the basis of fraud. The case was tried before an advisory jury. At the close of the evidence, upon motion of the defendant, the trial court directed a verdict for defendant on plaintiff's complaint. The jury returned a verdict in favor of defendant on his counterclaim, and a judgment granting an annulment was entered. Subsequently, on motion of plaintiff, the trial court determined that the jury's verdict was contrary to the law and evidence. It vacated the judgment and dismissed defendant's counterclaim. On appeal (62 Ill. App. 3d 498), a majority of the appellate court reversed the trial court's ruling on plaintiff's post-trial motion, directed reinstatement of the judgment for annulment, and issued a

certificate of importance to this court pursuant to Rule 316 (58 Ill. 2d R. 316).

In 1963, the parties discussed marriage but, when plaintiff informed defendant that she had previously been married and divorced, defendant explained that he, a Roman Catholic, was forbidden by his religion to marry her. In November of that year, however, plaintiff told defendant that she had learned from a friend in Arizona that her former husband had been killed in an auto accident and that she would receive a copy of the death certificate. Under these circumstances, defendant's church considered plaintiff a widow and defendant was free to marry her. Preparatory to marriage, plaintiff underwent conversion to Catholicism and, as a requirement thereof, executed a Sponsa in which she stated, under oath, that her former husband was dead.

Shortly before the couple married, in March of 1965, plaintiff had shown defendant a copy of the purported death certificate of her former husband. A child was born of the marriage in 1966.

In November 1973 the couple separated, and the following month, plaintiff sued for divorce. On May 10, 1974, defendant filed a counterclaim for annulment which alleged that plaintiff had fraudulently induced him to consent to marriage by misrepresenting that her former husband was dead.

At trial, defendant testified that, because of his religious convictions, he would not have married plaintiff had he not believed her to be a widow, and that he first learned that her former husband was still alive on February 1, 1974. The ex-husband was, in fact, called as a witness. The Sponsa and the copy of the purported death certificate were introduced into evidence. During examination by defendant's counsel, plaintiff admitted that, at the time she swore to and signed the Sponsa, she knew that her former husband was not dead. When questioned about the

purported death certificate, plaintiff invoked the constitutional privilege against self-incrimination.

The evidence in this case clearly and convincingly showed that plaintiff had perpetrated a fraud upon defendant in order to obtain his consent to the marriage. Although such fraud would render the ordinary contract void, a marriage contract can be voided only if the nature of the fraud itself affects the essentials of the marriage. What constitutes the "essentials" of marriage cannot be expressly delineated, for what is essential to one marriage may not be equally significant to another. Whether a fraud goes to the essentials of a marriage must be determined on the basis of the facts in an individual case.

This court was faced by such a determination in *Lyon v. Lyon* (1907), 230 Ill. 366, wherein the wife had falsely represented to her husband, during their engagement, that she had not had an attack of epilepsy for eight years. The husband alleged that the representation was made with the intention of inducing him to marry her, and that he had relied upon the truth of the statement in marrying. Affirming the dismissal of the husband's action for annulment for want of equity, the court stated:

> "The fraudulent representations for which a marriage may be annulled must be of something essential to the marriage relation,—of something making impossible the performance of the duties and obligations of that relation or rendering its assumption and continuance dangerous to health or life. [Citations.] " *Lyon v. Lyon* (1907), 230 Ill. 366, 371.

In *Bielby v. Bielby* (1929), 333 Ill. 478, wherein it was determined that no fraud existed, the court, in *dicta,* repeated the above quote from *Lyon* and further stated:

> "The degree of fraud sufficient to vitiate an ordinary contract will not afford sufficient grounds for the annulment of a marriage. It is not

sufficient that the complainant relied upon false representations and was deceived. False representations as to fortune, character and social standing are not essential elements of the marriage, and it is contrary to public policy to annul a marriage for fraud or misrepresentations as to personal qualities." 333 Ill. 478, 484.

With this background in mind, we turn to the issue before us: Did the fraud, under the circumstances of this case, go to the essentials of the marital relationship, rendering it impossible for defendant to perform the duties and obligations of his marriage?

In *Jordan v. Jordan* (1975), 115 N.H. 545, 345 A.2d 168, the plaintiff, a Roman Catholic, was granted an annulment on the basis that, at the time of her marriage, she did not know that her husband had been previously married; that she would not have married him had she known, and was prohibited by her religious belief from living with him thereafter. In *Bilowit v. Dolitsky* (1973), 124 N.J. Super. 101, 304 A.2d 774, plaintiff, a practicing Orthodox Jew, married on the basis of defendant having represented that he shared that religious conviction. Upon learning that defendant had misrepresented his faith, plaintiff sought an annulment. The court granted the annulment and stated:

"To plaintiff the religious beliefs and convictions of her husband were essential to her marriage. She could not have properly performed the duties of a wife and mother, following the rules and teachings of her faith, without the support of a husband holding the same beliefs. Defendant, having substantially and knowingly misrepresented the same to her, and plaintiff having relied thereon in entering into the marriage, this court holds the fraud to which plaintiff was subjected to be 'gross and far-reaching' ***. [Citations.]"

124 N.J. Super. 101, 104, 304 A.2d 774, 776.

*Sub judice,* defendant has established that he is a loyal practitioner of his faith and has lived according to the rules and dictates of his church. In the absence of certain modifying circumstances, which apparently did not exist here, the defendant's religion prohibits marriage with a divorced person whose former spouse is still living. Under the facts of this case we believe that this marriage would not have occurred but for the fraud, executed for the purpose of inducing defendant's consent. Furthermore, since discovering the fraud, defendant is unable to continue marital cohabitation with plaintiff. It can be seen that this disability is the product of a canon of defendant's religion, placed upon him by his church. This is to be distinguished from a mere subjective, personal aversion. (See Kingsley, *Fraud as a Ground for Annulment of a Marriage,* 18 S. Cal. L. Rev. 213, 228 n.95 (1945).) To deny defendant an annulment would cause the defrauded party to bear the consequences of the deception and allow the deceiver to proceed with impunity.

Under the circumstances of this case, we hold that the fraud goes to the essentials of the marital relationship, defendant's knowledge of which has rendered it impossible for him to continue to perform the duties and obligations of his marriage. As stated by the appellate court, "It is not in the public interest to protect such a marriage to the serious detriment of the defrauded party."

We recognize that the parties lived together as husband and wife for several years, and that a child of the marriage exists. Although we consider lengthy marital cohabitation to be a factor militating against the granting of an annulment, we do not consider it to be controlling here. Similarly, the existence of a child, although a factor, will not bar an annulment inasmuch as the status of the child, under Illinois law, is unchanged. See Ill. Rev. Stat. 1975, ch. 89, par. 17a, presently found at Ill. Rev. Stat. 1977, ch. 40, par. 303.

Based upon the foregoing, we conclude that defendant is entitled to an annulment. The judgment of the appellate court is, therefore, affirmed.

*Judgment affirmed.*