**Sharon ELLIOTT, Appellant,**

v.

**Christopher JAMES, Appellee.**

No. S–8000.

Supreme Court of Alaska.

May 28, 1999.

---

**55.** Alaska R. Civ. P. 95(a).

**56.** *Cf.* Rule 95(b)(expressly requiring notice).

Sandra K. Saville, Anchorage, for Appellant.

G.R. Eschbacher, Law Office of G.R. Eschbacher, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

PER CURIAM.

## I. INTRODUCTION

After filing for divorce from her husband Christopher James, Sharon Elliott learned that James had deceived her about his past marital status and involvement with the law. Elliott then supplemented her complaint to request an annulment based on fraud. Elliott asked the court to award her the couple's primary asset, a condominium purchased before the marriage and used as the couple's marital residence, because she claimed that James had taken advantage of her financially. The superior court ruled that an annulment was inappropriate and divided the equity of the condominium evenly between the parties. We affirm both of the trial court's rulings.

## II. FACTS AND PROCEEDINGS

Sharon Elliott filed for divorce from Christopher James in September 1995 after less than two years of marriage. Approximately one year later, Elliott learned that James had deceived her about his background and supplemented her divorce complaint to request an annulment based on fraud. She claimed that James had misled her in two specific ways: He had lied to her about the existence of a prior marriage and about a prior misdemeanor conviction.

During trial, Elliott portrayed James as a "con artist" who had lied to her about his past in order to marry her and live off her income. To support her contention that James was a "flimflam" man, Elliott pointed to the fact that James had not filed or paid taxes in over five years and had no record of how he had spent the approximately $140,000 that he had earned in the three years prior to trial. The evidence at trial showed that at various times during their courtship, James had told Elliott that he had never been married before.[1] Although James's former girlfriend advised Elliott that he was deceiving her about his prior marital status, Elliott believed James's declarations of bachelorhood. Elliott also trusted James when he told her that there was nothing inappropriate in his past of which she should be aware. Still, she testified that it was not important to her to know whether James had been married before except insofar as it reflected upon his truthfulness.

Because she believed that James had married her for her money, Elliott argued that the superior court should award her the parties' marital residence, a condominium. The parties bought the condominium shortly after they became engaged in June 1993. Although both Elliott and James were obligated on the loan obtained to pay for the condo-

---

1. In fact, James continued to insist throughout the course of the marriage and through the discovery process leading up to the divorce trial that Elliott was his first wife: He indicated that he had never been married before both on his marriage license application and in an interrogatory filed with the superior court in the divorce action.

minium, Elliott paid the down payment and closing costs, approximately $17,000, from her separate funds. Elliott's evidence showed that she also paid the vast majority of the couple's living expenses during the marriage, including the condominium's mortgage payments. In contrast, James's financial statement showed that he had earned large sums of money during the marriage for which he could not account. Elliott therefore claimed that James did not deserve to share in the condominium's equity.

Although it found that James had been dishonest with Elliott about his background prior to their marriage, the superior court ruled that annulment was inappropriate because Elliott had failed to show by clear and convincing evidence that her consent was "obtained by the fraud alleged." The court also ruled that the parties had treated the condominium as a marital asset and, after considering the factors listed in AS 25.24.160(a)(4), "concluded that the most equitable division ... [was] to divide the equity in the condominium equally between the parties."

Elliott appeals.

### III. DISCUSSION

#### A. Standard of Review

##### 1. Annulment

■ We review de novo questions of law,[2] such as the superior court's legal conclusion that the fraud alleged in this case did not justify an annulment. We review questions of fact under the clearly erroneous standard;[3] we apply this standard to the questions of whether James deceived Elliott and whether Elliott agreed to marry him as a result of this deception.

##### 2. Property division

■ Generally, a superior court has broad discretion when dividing property in a divorce proceeding and we will not disturb the superior court's property division unless it is clearly unjust.[4] Further, an equal division of property, such as the one entered in this case, is presumptively valid; as the party seeking a modification, Elliott bears the burden of showing that it is unfair.[5]

■ The classification of property depends on the intent of the parties.[6] We review the superior court's factual decision that the condominium is marital property under the clearly erroneous standard.[7] But we exercise our independent judgment in determining whether or not the superior court applied the correct legal rule in classifying the property—that is, whether it looked to the parties' intent rather than to other factors.[8]

#### B. The Superior Court Correctly Refused to Grant Elliott an Annulment Based on Fraud.

■ Elliott argues that the superior court should have granted her an annulment because she proved that James had been dishonest with her about his past and that she would not have married him "had she known the truth about his deceit." As the party seeking to annul the marriage, Elliott must prove that it is invalid by clear and convincing evidence.[9]

Although we have never previously addressed the issue of annulment, courts are generally reluctant to grant annulments based on fraud. Decisions from other jurisdictions generally hold that marriages are presumed valid and can be annulled on the basis of fraud only if the fraud concerns an issue essential to the marriage.[10] While the

2. See Laing v. Laing, 741 P.2d 649, 651 (Alaska 1987); Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

3. See State, Dep't of Revenue v. Merriouns, 894 P.2d 623, 625 (Alaska 1995).

4. See Laing, 741 P.2d at 651.

5. See Julsen v. Julsen, 741 P.2d 642, 645 (Alaska 1987).

6. See Harrelson v. Harrelson, 932 P.2d 247, 251 (Alaska 1997).

7. See id. at 250.

8. See Julsen, 741 P.2d at 646 n. 4.

9. See, e.g., In re Marriage of Burnside, 777 S.W.2d 660, 664 (Mo.App.1989); Panzer v. Panzer, 87 N.M. 29, 528 P.2d 888, 891 (1974).

10. See, e.g., Wolfe v. Wolfe, 76 Ill.2d 92, 27 Ill. Dec. 735, 389 N.E.2d 1143, 1144 (1979) ("Although such fraud would render the ordinary contract void, a marriage contract can be voided only if the nature of the fraud itself affects the essentials of the marriage."); Guggenmos v. Gug-

superior court found that James misled Elliott about his background,[11] it is an open question whether concealing a prior marriage and a misdemeanor conviction constitutes a fraud "essential" to the marriage. At least one case holds that failure to disclose a prior marriage and divorce does not justify annulment based on fraud.[12]

In the case at hand, we agree with the superior court's ruling that "[Elliott]'s consent to marry [James] was not obtained by the fraud alleged."[13] Elliott has failed to show by clear and convincing evidence that James's misrepresentations about his marital status and conviction induced her to marry him. Instead, Elliott specifically testified at trial that she was not concerned with the actual fact of a prior marriage but only "wanted to know if he was deceiving me."

 Elliott thus appears to argue that James defrauded her by presenting himself as an honest person when he was actually dishonest. But this allegation falls short of the reliance element necessary to sustain a fraud claim. If one could sustain a fraud allegation because a spouse turned out to have a different character than one thought, many divorces could probably qualify for an annulment. For this reason, at least one court has concluded that false representations about one's character do not justify annulment.[14] We agree and therefore conclude that Elliott failed to prove that James's deception about his marital status and involvement with the law induced her to marry him.

### C. The Superior Court Did Not Abuse Its Discretion in Valuing and Dividing the Condominium.

Elliott presents two primary arguments challenging the superior court's division of the condominium's equity. First, she claims that the condominium is her separate property because she used her funds for the down payment and for all the mortgage payments. Second, she contends that James should not have received half of the equity because he depleted marital assets.

#### 1. The superior court correctly concluded that the condominium is marital property.

The condominium's equity stems both from a down payment made prior to the parties' marriage and from payments made during the marriage. Because the superior court found that the parties' earnings during the marriage were marital and because Elliott has not contested this finding, she cannot now claim that the condominium is her sole property based on the fact that the couple used her earnings to make mortgage payments during the marriage. Thus, Elliott's claim can succeed only if the condominium qualifies as her pre-marital asset.

 Even if Elliott had paid the entire purchase price of the condominium prior to the parties' marriage and therefore clearly "acquired" it before marriage,[15] the superior

---

*genmos*, 218 Neb. 746, 359 N.W.2d 87, 91 (1984) ("While [exaggerations of accomplishments, character, and circumstances] constitute a species of fraud, they do not affect a basis for destruction of the marriage.").

11. James has not appealed this finding.

12. *See Charley v. Fant*, 892 S.W.2d 811, 813 (Mo.App.1995). Although Elliott does discuss James's failure to disclose his criminal conviction in her brief, her argument focuses primarily on his misrepresentations about his prior marriage.

13. Elliott also disagrees with the superior court's apparent conclusion that after-acquired information cannot be the basis for annulment. The superior court commented that Elliott could not make a successful claim for annulment, in part because "[i]t was only after the complaint for divorce was filed that [Elliott] learned of the information she relies on to support her contention of fraud." We agree that any reliance the

court placed on the timing of Elliott's discovery of James's misrepresentation was misplaced. The essence of Elliott's fraud claim is that James concealed information from her that would have affected her decision to marry him. Thus, the fact that she discovered this information only after the fact supports her fraud case rather than defeats it.

14. *See Wolfe*, 27 Ill.Dec. 735, 389 N.E.2d at 1144 ("False representations as to fortune, character, and social standing are not essential elements of the marriage, and it is contrary to public policy to annul a marriage for fraud or misrepresentations as to personal qualities.") (internal quotation marks omitted).

15. *See* AS 25.24.160(4) ("[T]he court, in making the division, may invade the property ... of either spouse *acquired* before marriage when the balancing of the equities between the parties requires it ....") (emphasis added).

court still had the statutory authority to treat the condominium as marital property. We recently held in *Harrelson v. Harrelson*[16] that premarital property becomes marital as a matter of law "upon a showing that the parties intended to treat the property as marital."[17] In determining the parties' intent, the court should consider such factors as "(1) the use of property as the parties' personal residence, and (2) the ongoing maintenance and managing of the property by both parties, as well as (3) placing the title of the property in joint ownership and (4) using the credit of the non-titled owner to improve the property."[18]

■ The superior court found that the parties "demonstrated a clear intent to retain the [condominium] as part of the marital union and thus part of the marital estate." We agree. First, the condominium was the parties' personal residence. Second, both of the parties' names appeared on the title to the property. Third, both Elliott and James were obligated on the loan that was used to remodel the condominium. Because at least three of the factors discussed in *Harrelson* are met in this case, the superior court's finding that the condominium was marital property is not clearly erroneous.

In a factually similar case, we concluded that the property in question was properly considered marital. In *Carlson v. Carlson*,[19] we held that property purchased shortly before the marriage, even if it were purchased solely with the husband's funds, was marital property where the wife had power of attorney to sign the purchase papers and title was taken jointly.[20] Accordingly, we conclude here that the superior court did not err in treating the condominium as marital property subject to division.

■ Elliott also argues that the superior court should have applied the "source of funds" rule in classifying the condominium. Under this approach, property is classified by the origin of the funds used to acquire it: If marital funds are used to buy the property it is a marital asset, and if separate funds are used it is a separate asset.[21] Property purchased using debt such as a mortgage is classified according to the source of the funds used to pay off the debt.[22] Thus, courts using the source of funds approach consider property to have been acquired during the marriage to the extent that it was paid for with marital funds.[23]

■ Elliott argues that since she purchased the condominium with separate funds and paid the mortgage payments from separate funds, the superior court should have applied the source of funds rule and classified it as a non-marital asset. In *Zimin v. Zimin*[24] we stated that the source of funds approach would not be inconsistent with Alaska statutes and case law.[25] But we noted that it should be used only in very limited circumstances. In *Zimin*, the parties did not present any evidence whatsoever of the current value of their assets, and the superior court found that obtaining such appraisals was not feasible.[26] Since it could not divide and value the assets in the usual manner, the trial court "identified the 'marital portion' of the various assets as being available for distribution" according to the source of funds used to obtain them.[27] We noted that the court's unorthodox methodology yielded the same result as would have the application of the traditional rules.[28]

The situation before us is distinguishable from *Zimin*. Whereas the *Zimin* court applied the only classification method available

**16.** 932 P.2d 247 (Alaska 1997).

**17.** *Id.* at 251 (citation omitted).

**18.** *Cox v. Cox*, 882 P.2d 909, 916 (Alaska 1994) (citations and internal quotations omitted), *quoted in Harrelson*, 932 P.2d at 251.

**19.** 722 P.2d 222 (Alaska 1986).

**20.** *See id.* at 224–25.

**21.** *See Zimin v. Zimin*, 837 P.2d 118, 122 n. 6 (1992).

**22.** *See id.*

**23.** *See* Brett R. Turner, *Equitable Distribution of Property* § 5.10, at 161 (2d ed. 1994 & Supp. 1997).

**24.** 837 P.2d 118 (Alaska 1992).

**25.** *See id.* at 122 n. 6.

**26.** *See id.* at 122 & n. 6.

**27.** *Id.* at 122 n. 6.

**28.** *See id.* at 122 & n. 6.

and reached the same result, the superior court in this case heard evidence on the value of the condominium. No barrier existed, therefore, to its application of the traditional method of property valuation and division. Moreover, Elliott asks us to extend the source of funds rule precisely because it would create a different outcome. We thus find no error in the superior court's refusal to apply the source of funds rule.

2. *The superior court did not abuse its discretion in awarding James half of the condominium's equity.*

■ Although we hold that the superior court correctly treated the condominium as marital property, the question remains whether it properly divided the property's equity. Alaska Statute 25.24.160(4)(E) instructs trial courts to consider the conduct of the parties, including whether there has been unreasonable depletion of marital assets, in dividing marital property.[29] We recently specified in *Jones v. Jones*[30] the standard for determining whether a party's conduct qualifies as depletion of marital assets. The elements of unreasonable depletion are "(1) use of personal property for the spouse's own benefit, (2) at a time when the marriage is breaking down (either before or after separation), (3) with an intent to deprive the other spouse of the other's share of the marital property."[31] Not all of the identified elements need to be present in each case.[32]

■ Elliott claims that James did not deserve half of the equity because he depleted marital assets by squandering much of his income during the years they were married. But Elliott's argument does not amount to much more than a claim that James did not contribute equally to the marriage. Under *Jones*, a party must point to more than the fact that her spouse spent excess funds during marriage and cannot account for those funds. The evidence pre-

sented at trial only showed that James earned a substantial amount of income during the years of his marriage for which he could not account, not that he failed to contribute to the couple's household and business expenses. To say that a party is a poor money manager is insufficient to show intent to deprive the other spouse of marital assets. So although the court had facts before it that arguably justified a finding of depletion, the superior court's finding that neither party unreasonably depleted marital assets is not clearly erroneous. Therefore, the trial court did not err in distributing the condominium's equity equally between the parties.

## IV. CONCLUSION

Because we find no clear error, we AFFIRM the superior court's rulings rejecting Elliott's claim for an annulment based on fraud and dividing the condominium's equity equally.

---

**29.** James argues that Elliott has waived her claim of depletion. We disagree. Although Elliott did not use the term unreasonable depletion of assets, she argued in the superior court that James had consistently taken advantage of her financially and therefore did not deserve to receive any money from the marital estate. As part of the proof she presented, Elliott pointed out that James had earned a substantial amount of money during the years of their marriage for

which he could not account. This argument was sufficient to preserve the issue of unreasonable depletion.

**30.** 942 P.2d 1133 (Alaska 1997).

**31.** *See id.* at 1140.

**32.** *See id.*