*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| YVONNE M. GAMBINI, | ) |
| | ) Supreme Court No. S-16945 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-16-01858 CI |
| v. | ) |
| | ) O P I N I O N |
| PERRY W. HAMILTON, | ) |
| | ) No. 7347 – March 29, 2019 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Yvonne M. Gambini, pro se, Wasilla, Appellant. Notice of nonparticipation filed by Kenneth J. Goldman, Kenneth J. Goldman, P.C., Palmer, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I. INTRODUCTION

Yvonne Gambini appeals the superior court's property division order for her divorce from Perry Hamilton. Gambini argues that she is entitled to more than half of the marital estate and that the superior court erroneously treated a loan she made to Hamilton prior to their marriage as a marital obligation. She also contends that the court

incorrectly valued Hamilton's retirement account and that several of its procedural decisions unfairly prejudiced her or violated her rights. None of Gambini's claims amounts to reversible error. We therefore affirm the superior court's property division order.

## II. FACTS AND PROCEEDINGS

Sometime in 2006 Gambini and Hamilton rekindled a relationship from decades prior. Hamilton was married to someone else at the time, though he was in the process of dissolving that marriage. As part of this process, he agreed to take on certain financial obligations on behalf of his then-wife. Hamilton and Gambini married on May 29, 2007.

About five months before they married, the couple took out a home equity line of credit (HELOC) for $50,000, secured by a cabin Gambini owned in Washington, where they were living at the time. At trial Gambini asserted that $37,000 of this first HELOC was a personal loan to Hamilton; she could not, however, remember "what [the $37,000] was actually spent on." Hamilton testified that Gambini offered to help him speed along his divorce proceedings by lending him some money from the HELOC on her cabin; Hamilton recalled using $14,000 of the HELOC funds to pay off debt associated with his previous marriage, but he was not certain how the rest was spent.

Gambini and Hamilton made interest payments on the HELOC from a joint bank account, but they never made any payments toward the principal. Approximately one year after their marriage, the couple amended the HELOC, taking out another $42,005.90 on the line of credit. This second HELOC disbursement helped fund the couple's move to Alaska and their purchase of two properties in the Matanuska-Susitna Borough: one on Hewitt Lake and one on Kim Drive.

Eventually the couple sold the Kim Drive property to Gambini's son. They used the proceeds from the sale to purchase two lots adjoining the Kim Drive property —

the Barbi Drive lots — and to develop them for a residence. A loan on Hamilton's 401(k) also partially financed the purchase of the Barbi Drive lots.

Gambini and Hamilton contracted with Selway Corporation to finance the construction of a residence on the Barbi lots. The couple conveyed the lots to Selway, which used the property as security for a loan to finance construction of the residence; the couple would purchase the residence from Selway upon construction. Construction on the residence was near completion when the couple separated. At that time they modified the contract with Selway so Gambini became the sole buyer.

Gambini filed for divorce in August 2016. Her complaint recited the basic elements of a claim for divorce and included no specific claims as to the division of the marital estate. After Hamilton served his response, Gambini moved for leave to amend her complaint to add specific claims about the division of marital assets as well as contract and tort claims. The superior court denied this motion in December. In the course of discovery, Gambini also filed a "Motion to Determine the Sufficiency of Defendant's Objections and Answers to Plaintiff's Request for Admissions and to Deem Such Requests Admitted." The superior court did not rule on the motion before the case went to trial.

The parties filed trial briefs in May 2017, and a bench trial was held the next day. Hamilton appeared with counsel, and Gambini was unrepresented, although her brother, sister, and business partner were present. Gambini and Hamilton were the only witnesses.

The superior court issued its findings of fact and conclusions of law in December. The court divided the marital estate roughly equally. It granted each party a parcel of real property; declared the Washington cabin Gambini's separate property but the HELOC taken out on it a marital obligation; and awarded Gambini half of the marital portion of Hamilton's 401(k), to account for his share of the HELOC assigned to

Gambini. The court also noted its decision not to address Gambini's discovery motion prior to trial, declaring the motion now moot.

In December 2017 Hamilton filed a proposed Qualified Domestic Relations Order (QDRO) to govern the transfer of the portion of his 401(k) owed to Gambini. Gambini filed her appeal in January 2018, and Hamilton filed a notice of non-participation later that month. During the pendency of Gambini's appeal, she and Hamilton engaged in litigation over the QDRO.

## III.   DISCUSSION

On appeal Gambini argues that the superior court improperly classified two real-property parcels and the HELOC secured by her Washington cabin as marital. She also contends that the court abused its discretion in dividing the marital estate equally and that it incorrectly valued Hamilton's retirement account. She challenges the manner in which the trial court handled her divorce proceedings, arguing that it improperly prejudiced her in a variety of ways. And she challenges the QDRO issued after she filed her notice of appeal.

Upon reviewing Gambini's claims, we affirm the superior court's property division order. Although the court's reasoning with respect to classification of the HELOC as a marital investment was partially flawed, its ultimate conclusion was not clearly erroneous. And none of Gambini's other claims amount to reversible error.

### A.    The Superior Court's Classification Of Assets And Obligations Was Not Erroneous.

When making an equitable division of marital assets, the superior court must first determine "what specific property is available for distribution," which involves classifying assets as separate or marital.[1] "The characterization of property as separate

---

[1]     *Stanhope v. Stanhope*, 306 P.3d 1282, 1286 (Alaska 2013).

or marital may involve both legal and factual questions."[2] "Findings of fact are reviewed for clear error, but whether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[3] "We will find clear error only if 'we are left with a definite and firm conviction on the entire record that a mistake has been made.' "[4]

### 1. Classifying the entire HELOC as a marital obligation was not clear error.

Gambini argues that a portion of the HELOC was a personal loan to Hamilton, made prior to the marriage to assist Hamilton with expenses related to his previous marriage. She contends that the superior court erred by classifying such funds, used to finance the expenses of another marriage, as a marital obligation. The superior court considered Gambini's arguments and observed that she "provided no documents memorializing the loan and she did not seek repayment of the loan at any time during the parties' nine-year marriage." The court concluded that the HELOC in its entirety was a marital investment because it found that Gambini and Hamilton "intended [it] to be a means to finalize [Hamilton's] divorce so that they could begin their marriage."

The superior court's factual finding that no part of the HELOC constituted a personal loan to Hamilton was not clearly erroneous. The court was correct that Gambini did not submit any documents identifying a subset of the HELOC funds as a loan to Hamilton, nor did she introduce evidence that she had ever sought repayment of the alleged loan. Moreover the evidence indicated that the funds at issue were spent on

---

[2]     *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006).

[3]     *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[4]     *Tomal v. Anderson*, 426 P.3d 915, 923 n.8 (Alaska 2018) (quoting *Wood v. Collins*, 812 P.2d 951, 954 n.2 (Alaska 1991)).

an indeterminate mix of joint and separate obligations and expenses. On this record, we are not left "with a definite and firm conviction" that the superior court made a mistake when it determined that no portion of the HELOC was a personal loan to Hamilton.[5]

However whether the superior court properly characterized the entire HELOC as a marital obligation is a separate question. "As a general rule . . . , property is separate property if it was acquired by a spouse before the marriage."[6] But this rule is subject to some exceptions;[7] for instance, a trial court may classify property or debt acquired prior to the marriage as marital if it finds that the parties intended it to become part of the marital estate.[8] The superior court's "[u]nderlying findings as to the parties'

---

[5]     *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003) (quoting *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997)) (describing our standard of review for clear error).

[6]     *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018); *see also Wagner v. Wagner*, 386 P.3d 1249, 1252 (Alaska 2017) ("Generally, a spouse is not liable for the other spouse's premarital debts or liabilities."); AS 25.15.050 ("[N]either spouse is liable for the debts or liabilities of the other incurred before marriage, and . . . neither is liable for the separate debts of the other.").

[7]     *See Kessler*, 411 P.3d at 618; *see also Murray v. Murray*, 788 P.2d 41, 42 (Alaska 1990) ("We note that property acquired by the Murrays as a couple may be marital property even if the acquisition predates the marriage.").

[8]     *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986) (affirming the classification of real property acquired "shortly before the parties' marriage" as marital because the prospective wife "had power of attorney to sign the purchase papers and title was taken jointly"); *cf. Kessler*, 411 P.3d at 618-620 (explaining that, for separate property to transmute into marital property, "the intent that must be shown is the intent of the owning spouse that his or her separate property be treated as marital property *for the purpose of dividing property in the event of a divorce*" (emphasis in original)). We generally treat debt similarly to property when categorizing it as marital or nonmarital. *See, e.g., Coffland v. Coffland*, 4 P.3d 317, 321 (Alaska 2000).

intent are factual findings reviewed for clear error."[9]

Here the HELOC on Gambini's cabin was issued to Gambini and Hamilton jointly before marriage, and the couple used the funds from the HELOC for joint expenditures, including their move to Alaska. It is thus clear that the initial HELOC was a joint premarital obligation assumed by Gambini and Hamilton. The superior court found that the couple intended this joint obligation to be marital because part of the initial $50,000 drawn from it paid off a debt Hamilton owed to his then-wife, thereby facilitating the dissolution of his marriage and permitting his subsequent marriage to Gambini. It later found that the "balance owing" on the HELOC "was a marital obligation because the funds were used by both parties."

The superior court's analysis of this issue is partially flawed. The couple's shared use of HELOC funds does not, by itself, demonstrate the necessary intent to include this joint premarital obligation in the marital estate. As we have previously noted, the intent to share property is distinct from the intent that that property be marital, subject to division in the event of a divorce.[10] Thus it would be incorrect to infer, solely from the couple's use of HELOC funds to support their relationship, that Gambini and Hamilton intended their joint obligation to be part of the marital estate. However the record provides additional evidence of that intent. For example, the couple made post-marital payments on the HELOC from a joint account; they failed to document any separate debts within the HELOC; and they decided to "roll" the first, premarital HELOC withdrawal into a second, post-marital withdrawal. On this record we cannot conclude

---

[9] *Tomal*, 426 P.3d at 923; *see also Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[10] *See Kessler*, 411 P.3d at 619 (discussing transmutation).

that the superior court committed clear error when it determined that the couple intended the HELOC to be a marital obligation.

And even if the superior court's classification were erroneous, the error would be harmless.[11] Alaska Statute 25.24.160(a)(4) authorizes invasion of premarital holdings "when the balancing of the equities between the parties requires it."[12] Having determined that the Washington cabin was Gambini's separate property, the superior court recognized that Gambini's possession of this asset would be threatened if Hamilton failed to pay his share of the joint obligation for which the cabin was security. The court's property division order thus offset an award of the entire HELOC to Gambini by awarding her a portion of Hamilton's 401(k) equal to one-half the HELOC's principal balance.

The superior court's decision to consider the HELOC with the marital property was clearly aimed at ensuring an equitable division between the parties. Therefore it would have been authorized by AS 25.24.160(a)(4), and not a clear abuse of discretion, even if the classification of the HELOC as a marital obligation had been erroneous.[13]

---

[11]     "[N]o error . . . in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears . . . inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Alaska R. Civ. P. 61.

[12]     *Carlson*, 722 P.2d at 224 (stating that separate premarital property "should not have been deemed a marital asset available for division unless the court specifically found that a 'balancing of the equities between the parties' required invasion of the premarital holding" (quoting AS 25.24.160(a)(4))).

[13]     *See Bandow v. Bandow*, 794 P.2d 1346, 1347 n.3 (Alaska 1990) ("Whether
(continued...)

## 2. The superior court properly classified real property purchased during the marriage as marital.

Gambini asserts that the superior court erred in failing to classify two real-property parcels purchased during the marriage, the Hewitt Lake and Barbi Drive properties, as her separate property.[14]  Gambini did not raise this issue at trial, so it is waived as an issue for appeal.[15]  But even if the issue were properly before us, Gambini's argument could not prevail since it relies on a mistaken understanding of the doctrine of tracing.[16]

Assets acquired during the marriage are presumed to be marital.[17]  However, under the doctrine of tracing, assets acquired through a source other than

[13]     (...continued)
or not the equities require invasion of premarital assets . . . lies within the broad discretion of the trial court and will not be overturned absent a clear abuse of discretion." (quoting *Julsen v. Julsen*, 741 P.2d 642, 646 n.4 (Alaska 1987))).

[14]     Gambini extends the same argument to the Kim Drive property and the proceeds derived from its sale.  But the superior court did not address the Kim Drive property in its property division order.  The couple purchased this property with HELOC funds during their marriage, sold it, and put the proceeds towards the purchase of the Barbi Drive property.  Our analysis of the Barbi Drive property thus applies equally to the Kim Drive property.

[15]     *Wells v. Barile*, 358 P.3d 583, 589 n.17 (Alaska 2015).

[16]     As with Gambini's claim disputing the superior court's classification of the HELOC as a marital obligation, the superior court's application of the legal principles governing property classification is at issue, so we review its decision de novo. *See Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[17]     *See, e.g.*, *Coffland v. Coffland*, 4 P.3d 317, 321 (Alaska 2000) ("We presume that property acquired during the marriage is marital."); *cf. Stanhope v. Stanhope*, 306 P.3d 1282, 1290 (Alaska 2013) ("[T]here is a presumption that debts incurred during [the] marriage are marital.").

marital income may qualify as separate property if their acquisition can be traced through the "exchange, appreciation, or income" of a separate-property asset.[18] There are three primary types of separate property: "property acquired by one spouse before marriage, property acquired by gift, and property acquired by inheritance."[19]

Both properties in question here were purchased during the marriage and are thus presumptively marital.[20] Gambini contends that because the HELOC was secured by Gambini's separate property, her Washington cabin, the withdrawals on the HELOC are separate funds. Therefore, she argues, the real properties purchased with those funds should be separate as well. However credit obtained in the form of a secured transaction is not appreciation or income of the property that serves as collateral; the collateral simply facilitates the acquisition of credit. Thus the use of Gambini's separate property to secure the purchase loans for the two real-property parcels does not make those parcels her separate property.

B.     **Equitable Distribution Of The Marital Estate Was Not An Abuse Of Discretion.**

The "superior court has broad discretion when dividing property in a divorce proceeding and we will not disturb [a] property division unless it is clearly unjust."[21] In general we presume that an equal division of property is equitable.[22] It is

---

[18]     *Schmitz v. Schmitz*, 88 P.3d 1116, 1127 (Alaska 2004).

[19]     *Id.*

[20]     *Coffland*, 4 P.3d at 321.

[21]     *Elliott v. James*, 977 P.2d 727, 730 (Alaska 1999).

[22]     *Day v. Williams*, 285 P.3d 256, 261 (Alaska 2012).

the burden of the party seeking a different arrangement to show that an equal division is unjust.[23]

Gambini argues that evidence at trial showed Hamilton had unreasonably depleted the couple's marital assets through loans on his retirement account, transactions related to the couple's Kim and Barbi Drive properties, and the sale of a Toyota Tundra. For this reason, she asserts that equal division of the marital estate was an abuse of discretion.[24] But there was a reasonable explanation for the loans taken out by Hamilton, as well as the financial dealings surrounding the Kim and Barbi Drive properties.[25] Evidence supports the conclusion that the loans taken out on Hamilton's 401(k) during the marriage were for legitimate marital purposes, and no evidence, only Gambini's allegations, controverts this conclusion. With respect to the funds derived from the couple's sale of their Kim Drive home to Gambini's son, Gambini did not provide documentary evidence or testimony to contradict Hamilton's testimony that the proceeds were used for legitimate marital purposes. And she neither argued nor provided evidence supporting the claim that Hamilton had sold the couple's Toyota Tundra.

---

[23]    *Id.*

[24]    *See* AS 25.24.160(a)(4)(E) (providing as one factor for a superior court's fair allocation of the economic effect of divorce in its property division "the conduct of the parties, including whether there has been unreasonable depletion of marital assets"). "The elements of unreasonable depletion are '(1) use of personal property for the spouse's own benefit, (2) at a time when the marriage is breaking down (either before or after separation), (3) with an intent to deprive the other spouse of the other's share of the marital property.' Not all of the identified elements need to be present in each case." *Elliott*, 977 P.2d at 733 (quoting *Jones v. Jones*, 942 P.2d 1133, 1140 (Alaska 1997)).

[25]    "[F]actual findings of the trial court are reviewed for clear error"; we find clear error, where, after a thorough review of the record and viewing the evidence in the light most favorable to the trial court's rulings, we reach a definite and firm conviction that a mistake has been made. *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

The record also supports the superior court's conclusion that Gambini and Hamilton reached a good faith agreement that the Barbi Drive property under construction at the time of the couple's divorce, along with the associated mortgage, would be Gambini's "separate post-separation asset and liability." The financial burdens incidental to Gambini's acquisition of the Barbi residence as her separate property are a logical consequence of this decision, not evidence of unreasonable marital asset depletion. It was not clear error for the superior court to find no evidence of unreasonable depletion of marital assets, and therefore no abuse of discretion to divide the marital estate equally.

### C. There Was No Clear Error In The Superior Court's Valuation Of Hamilton's Retirement Account.

Retirement benefits earned during marriage are marital assets subject to equitable division.[26] To calculate the marital portion of Hamilton's retirement account, the superior court subtracted the account value printed on an account statement from 2007, the time of Gambini's and Hamilton's marriage, from the value printed on a statement from the time of the couple's separation. Gambini contends that the superior court undervalued the marital portion of Hamilton's retirement account by focusing on the wrong year.[27] She argues that a change in the account's administrator in 2010 means that a 2010 account statement, rather than the 2007 statement used by the court, provides the actual baseline value for the marital portion of the retirement account. But the change in administrator did not affect the validity of the trial court's use of a 2007 account statement; absent further evidence not present in the record, there is no reason to conclude that a change of administrator in 2010 somehow altered the starting value

---

[26] *Edelman v. Edelman*, 3 P.3d 348, 356 (Alaska 2000).

[27] Valuation of assets is a factual determination, which we review for clear error. *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

of the retirement account at the time of marriage in 2007.[28]  The trial court thus made no clear error in its valuation of Hamilton's retirement account.

> **D.      The Superior Court's Handling Of The Divorce Proceedings Did Not Prejudice Gambini Or Violate Her Rights.**

Gambini challenges the superior court's treatment of two pretrial motions, its failure to resolve the divorce case within six months of trial, and its treatment of her as an unrepresented litigant.  However none of these claims provides grounds for reversal.

The superior court did not commit reversible error by denying Gambini's motion to amend her complaint or by tabling her discovery motion until trial.  It was within the court's discretion to deny the addition of the contract and tort claims for which Gambini sought leave to amend her complaint,[29] as it was not manifestly unreasonable for the court to determine that they were non-divorce causes of action more properly decided in a subsequent case at law than in an equitable divorce proceeding.[30]  And Gambini was not prejudiced by the court's denial of her request to add specific claims regarding distribution of the marital estate since she had the opportunity to raise these claims at trial.  Likewise she was not prejudiced by the court's decision to leave her discovery motion pending at the time of trial and then dismiss it as moot.  The arguments

---

[28]      Gambini also claims that the loans on Hamilton's 401(k) should be added to its value.  But taking out a loan on a pension account does not increase that pension account's value by the amount of loan.

[29]      "We review the denial of leave to amend for abuse of discretion."  *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 671 (Alaska 2002).

[30]      *Nelson v. Jones*, 787 P.2d 1031, 1034 (Alaska 1990) (explaining that it is not necessary "to require tort actions between married persons to be litigated in the divorce proceeding").  Gambini's proposed contract and tort claims were based on Hamilton's withdrawal from involvement in construction of the Barbi Drive residence.

in her discovery motion raised questions of fact that could be more efficiently explored at trial than in a pretrial proceeding.[31] Therefore neither procedure constituted reversible error.

The superior court's failure to resolve Gambini's divorce case within six months of trial does not affect the validity of the judgment either. As Gambini points out, AS 22.10.190(b) declares that superior court judges may not be issued salaries unless they submit an affidavit assuring that all matters referred to them have been completed or decided within six months. But in *Hertz v. Hertz* we held that this statute is not directly enforceable by private citizens.[32] This forecloses Gambini's effort, as a private citizen, to enforce the statute. And even if the statute were privately enforceable, Gambini's failure to show how the delay influenced the court's decision would prevent us from reversing on this ground.[33]

Finally the superior court did not violate Gambini's right to due process or freedom of expression by the way it handled the case and treated her as an unrepresented litigant. Gambini's assertion that the trial court prevented her from presenting her case in the manner she intended is not borne out in the record: the court allowed her to use her notes consistent with the court rules and gave her the opportunity to call witnesses. And the record does not indicate that the court was impermissibly biased toward Hamilton's counsel; the court's questioning of Gambini evidences its effort to obtain relevant testimony, not to act as a cross-examiner for the defense. Gambini was not

---

[31]    *See Breck v. Ulmer*, 745 P.2d 66, 74 (Alaska 1987) (stating that the appellant "must show prejudicial error" to succeed on appeal; that is, "that the error . . . had 'substantial influence' on the outcome of the case" (quoting *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984))).

[32]    847 P.2d 71, 75 (Alaska 1993).

[33]    *See Breck*, 745 P.2d at 74.

clearly deprived of any right to cross-examine an adverse witness; she never asked to cross-examine Hamilton, and she raised no objection on the record that she had not been afforded the opportunity to do so.[34] Lastly the court's restriction on Gambini's ability to talk with her brother and sister at counsel table during the proceedings was well within the court's authority over the kind of speech that is permitted to occur at trial.[35] There was no constitutional violation in any of these actions by the superior court.

### E.      We Retain Jurisdiction Over Gambini's QDRO Claims.

Finally, Gambini takes issue with the substance and process of the QDRO issued to transfer half of the marital portion of Hamilton's pension fund to Gambini. But we cannot decide her claims regarding the QDRO because the order she disputes and its related filings are not in the record. We will thus issue additional orders to supplement the record and allow the parties to brief the claims related to the QDRO on the expanded record.

---

[34]      Moreover the federal right to cross-examine an adverse witness, flowing from the Sixth Amendment as applied to the states through the Fourteenth Amendment, applies only to criminal defendants — not civil plaintiffs like Gambini. *See* U.S. Const. Amend. VI (*"In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (emphasis added)); *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (stating that the rights conferred by the confrontation clause is secured for defendants in state proceedings under *Pointer v. Texas*, 380 U.S. 400 (1965)). And although the federal courts urge that a "special solicitude" be afforded to unrepresented litigants, this is a prudential policy rather than a constitutional mandate. *Tracy v. Freshwater*, 623 F.3d 90, 101-03 (2d Cir. 2010). So the trial court's failure to ask Gambini if she would like to cross-examine Hamilton cannot constitute a due-process violation.

[35]      *See Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (stating that the courtroom is a forum in which "the First Amendment rights of everyone . . . are at their constitutional nadir").

## IV.    CONCLUSION

For the reasons stated, we AFFIRM the superior court's property division order.  And we retain jurisdiction of the QDRO issue so that the parties may supplement the record and provide additional briefing.